586 So.2d 118 (1991)
Audrey Coogan Hodgins HARE
v.
Norman F. HODGINS.
Nos. 90-C-2405, 90-C-2445.
Supreme Court of Louisiana.
September 9, 1991.
*120 Philip R. Riegel, Jr., New Orleans, for plaintiff.
Floyd J. Reed, Reed & Reed, New Orleans, for defendant.
DENNIS, Justice.
We granted certiorari to decide whether the court of appeal correctly partitioned a divorced couple's community property interest in the employee spouse's defined benefits pension after it matured in 1988. The trial court divided the community interest by awarding the non-employee spouse a fixed percentage of the pensioner's retirement payments. The court of appeal amended, restoring full pension payments to the retiree spouse, and relegating the non-employee spouse to a lump sum representing her share of the unmatured pension as of the date in 1975 when the community was terminated. Hare v. Hodgins, 567 So.2d 670 (La.App. 5th Cir.1990). We vacate the partition decree and remand for further proceedings by the trial court consistent with this opinion.
The appeals court erred in basing its distribution to the non-employee spouse upon a valuation of the pension right as of the termination of the community in 1975. *121 Procedurally, a court partitioning community property is required to value the assets as of the time of trial on the merits. La. R.S. 9:2801(4)(a). Moreover, and perhaps more important, the appellate decision is in conflict with substantive law in several respects. The termination of the community does not have the effect of freezing the value of each spouse's undivided interest in the community assets. Each spouse continues to be a co-owner of the assets until they are partitioned and, as such, is entitled to benefit from any appreciation in their value. In the present case, because the pension right ascribable to the community was not partitioned prior to its maturity in 1988, each spouse is entitled to a distribution based on the actual value of the fully matured pension. Consequently, it is incorrect to base the 1988 partition on the much lower valuation as of 1975 when the pension right was subject to contingencies that might have prevented its maturity.
On the other hand, the trial court did not err or abuse its discretion by choosing a fixed percentage approach to partition the community interest in the pension right, but its application of that method, without any adjustment, may have overstated the part of the pension attributable to the community. If substantial post-community increases in the pension benefits were due to the employee spouse's individual meritorious efforts or achievement, and not related to prior contributions ascribable to the community, the percentage of the pension asset recognized as community property should be decreased accordingly.
We see no error in the trial court's overruling defendants' exceptions of prescription and res judicata, or in the court of appeal's affirmance of that ruling. The judgments below will therefore be affirmed to the extent that they overruled the exceptions of prescription and res judicata, but the partition decree will be vacated and the case will be remanded for a determination of whether the fixed percentage should be adjusted in light of the principles set forth in this opinion.

FACTS AND PROCEEDINGS BELOW
Norman Hodgins and Audrey Coogan were married June 2, 1951. Some five years later, on June 1, 1956, Norman began employment with Pan American Life Insurance Company, where he remained until his retirement on February 29, 1988. After a 24-year marriage Norman and Audrey obtained a separation from bed and board which effectively terminated the community in 1975. The parties voluntarily partitioned some of their community assets in 1977 prior to their final divorce in 1978. The act of partition did not allocate the relative entitlements of the parties in pension benefits earned as a result of Norman's participation in Pan American Life's Employees' Retirement Benefit Plan. This asset apparently escaped the attention of both counsel in preparing the conventional partition instrument. Following his retirement Norman began to draw $4,037.76 per month in retirement payments on March 1, 1988.
Audrey brought the action in the present case to partition the community interest in the pension benefits on March 23, 1988. The trial court overruled exceptions of prescription and res judicata filed by Norman. On the merits, the trial court followed a fixed percentage method and awarded Audrey a certain fraction of all Norman's past and future retirement payments. The fixed percentage awarded Audrey was based on the community or marital fraction rule under which the community's percentage of the pension benefits is assumed to be the same as that percentage of the employee spouse's creditable employment which occurred during the existence of the community.
Norman appealed. The court of appeal affirmed the procedural rulings, reversed the partition decree and substituted its own partition judgment awarding the pension to Norman and granting Audrey a lump sum based on the "Termination of Employment" provisions of the retirement plan. Under the plan, if Norman had chosen to terminate his employment at the time of the termination of the community in 1975, he would have been entitled to "a paid-up Deferred *122 Annuity Contract payable at age 65." The court accepted the calculation of the value of such an annuity in 1975 by Norman's actuary witness and awarded Audrey one-half of that amount, $15,219, with legal interest from 1975 until paid. Hare v. Hodgins, 567 So.2d 670 (La.App. 5th Cir.1990).
We granted the applications of the parties for writs. Hare v. Hodgins, 571 So.2d 638 (La.1990). After considering the arguments and briefs, we conclude that the court of appeal correctly reviewed and disposed of the prescription and res judicata issues. Accordingly, the court of appeal's judgment will be affirmed to this extent for the reasons assigned in its opinion. Therefore, in this review we will deal only with the question of whether the classification, valuation and distribution of the couple's interests in the pension complied with law and equity.

1. Classifying Pension Rights As Community or Separate Property
Before an asset can be classified as community or separate, it must first be identified as "property." K. Spaht and L. Hargrave, Matrimonial Regimes, 16 Civil Law Treatise § 2.1 (1989 & Supp.1991) [hereinafter "Spaht & Hargrave"]. This court decided in T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976) that an employee's contractual pension right is not a gratuity but a property interest earned by him.
To the extent that the right derives from the spouse's employment during the existence of the marriage, it is a community asset subject to division upon dissolution of the marriage. La.Civ.Code art. 2338; Sims v. Sims, 358 So.2d 919 (La.1978); T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976). Consequently, when the community is terminated, the employee's spouse is entitled to be recognized as the owner of one-half of the value attributable to the pension or deferred compensation right earned during the existence of the community. La.Civil Code art. 2336; La.R.S. 9:2801 (1991); Sims, supra at 923-24; T.L. James & Co., supra; James see generally, Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956); Moon v. Moon, 345 So.2d 168 (La.App. 3d Cir.) writ denied, 347 So.2d 250 (1977); Swope v. Mitchell, 324 So.2d 461 (La.App. 3d Cir.1975); Lynch v. Lawrence, 293 So.2d 598 (La.App. 4th Cir.) writ denied, 295 So.2d 809, 814 (1974); Laffitte v. Laffitte, 253 So.2d 120 (La.App. 2d Cir.1971). Correlatively, if part of the employee's pension right was earned before or after the existence of the community, that part of the pension right must be classified as the employee's separate property (or as property of a different marital regime) and separated from the community property interest to be divided. La.R.S. 9:2801 (1991); T.L. James & Co., Inc. v. Montgomery, supra.
As a general principle, a court partitioning a community asset is required to classify the property for this purpose as of the date of the termination of the community. La.Civ.Code arts. 2338-2341; La.R.S. 9:2801 (1991); K. Spaht & L. Hargrave, supra, §§ 7.25, 7.26. In the case of a pension right earned partly during and partly not during the community, however, the process of classification begins at the termination of the community and continues until a partition of that asset is effected. Because the community interest in the pension right is an incorporeal that may accrue or appreciate over time, or fluctuate in proportion to the employee spouse's separate property interest in the pension, the community and separate fractions of the pension cannot be separated and classified definitively until the partition.

2. Valuating and Dividing The Pension Right
The general rules provided by law for partitioning community property are, of course, applicable to dividing a community pension right. Each spouse owns a present undivided one-half interest in the community property. La.Civ.Code art. 2336. When the spouses are unable to agree upon an equal partition of community property, either spouse may bring an action to effect such a partition. La.Civ.Code arts. 807, 1289 and 1308; La.R.S. 9:2801. See also 1 *123 M. Planiol, Traite Elementaire De Droit Civil, Nos. 2497 et seq. (11th ed. La.St. L.Inst. trans. 1959). In allocating the community assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court must consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. La.R.S. 9:2801(4)(c).
The court is required to divide the community assets and liabilities so that each spouse receives property of an equal net value. La.R.S. 9:2801(4)(b). In order to avoid an unequal net distribution of assets and liabilities, the court may order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon specified terms and conditions; and the court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property as security. La.R.S. 9:2801(4)(c).
In determining the value of each community asset, including the community interest in the pension right, the court must valuate the asset as of the date of the partition trial on the merits. La.R.S. 9:2801(4)(a); Spaht & Hargrave, supra, at 346. The former spouses continue to be coowners of the community property even after the termination of the community and until it has been finally partitioned. See La.Civ.Code arts. 2369, 2369.1; La.Civ.Code art. 2369 comment (c); Spaht & Hargrave, supra, § 7.19. Consequently, when the court partitions a community property interest in a pension right by granting a former spouse cash or other property in lieu of an actual percentage of the pension payments, the court is required to valuate the community's interest in the pension right and the spouse's portion thereof as of the time of the partition trial on the merits.
The general rules for the partition of community property, however, do not address all of the problematic ramifications of classifying, valuating and distributing each spouse's interest in pension benefits which have been earned by one spouse partly during the marriage and partly before or after. In such cases, the pension benefits are composed of the separate property interest of the employee spouse in addition to the community interest. Furthermore, there is no custom from which rules can be derived for each particular situation. Accordingly, in the present case and others a court is bound to proceed and decide equitably to some extent, making resort to justice, reason and prevailing usages. La.Civ.Code art. 4.

3. Comparable Equitable Principles
In proceeding according to equity, we should be informed by the principles for classifying and dividing pension benefits that have evolved in other jurisdictions which administer systems of community property or equitable distribution of marital property.
Even in the states that do not have the community property system the prevailing trend is to classify property at divorce according to whether it is to be considered in distribution of equal or equitable shares of marital property to each spouse. L. Golden, Equitable Distribution of Property §§ 1.01-02 (1983 & Supp.1990); I Baxter, Marital Property § 1.2(b) (Supp.1991). This trend is rooted in recent changes in the status of women and a recognition that a non-employee spouse contributes significantly to the economic well-being of the family. Id. At the same time, recent recognition of the pension right as an item of "property," and a major one for many couples, subject to division or distribution has posed practical problems for courts in every state. Golden, supra at §§ 6.09-6.17. Accordingly, courts and commentators nationwide have had to solve the modern problem of classification, valuation and distribution of a pension right earned by one spouse.
Although there are important differences between the doctrines of community property and equitable distribution, and between the rules of individual jurisdictions, the problems of valuating and dividing community or marital pension rights in other *124 fora are sufficiently analogous to our own to make the reasoning of their courts and commentators considerable and useful. See Niroo v. Niroo, 313 Md. 226, 545 A.2d 35, 40 n. 3 (1988); Rodgers v. Rodgers, 98 A.D.2d 386, 470 N.Y.S.2d 401 (1980); See e.g., Weisfeld v. Weisfeld, 513 So.2d 1278, 1280 n. 1 (Fla.Dist.Ct.App.1987), aff'd, 545 So.2d 1341 (Fla.1989); See also, 3 Family Law and Practice § 38A.08 (A. Rutkin, ed. 1990); Goldberg, Valuation of Divorce Assets § 9.1 (1984 & Supp.1987); L. Golden, Equitable Distribution of Property §§ 1.01-1.12 (1983 & Supp.1990).
In general, the valuation and division of pension rights is a matter for the trial court's discretion, but usually calls upon the court to evaluate various alternatives developed and approved by the appellate opinions and scholarly commentary. There is a wealth of legal literature regarding the basic methods of dividing the pension in community property and equitable distribution jurisdictions, as well as variations and alternatives to them. See appendix. Two of the principal methods of apportioning the pension benefits are the "present value" and the "fixed percentage" methods. Id.
A trial court can attempt to calculate the "present value" of pension benefits projected for the employee spouse's future retirement years. Under this approach, the benefits payable must be adjusted and discounted for contingencies such as mortality, interest, probability of vesting, probability of continued employment and retirement life expectancy. Morlan v. Morlan, 720 P.2d 497 (Alaska 1986); Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla.1986); Hodgins v. Hodgins, 126 N.H. 711, 497 A.2d 1187 (1985); Kikkert v. Kikkert, 177 N.J.Super. 471, 427 A.2d 76 (App.Div.1981), aff'd 88 N.J. 4, 438 A.2d 317 (1981); Bloomer v. Bloomer, 84 Wis.2d 124, 267 N.W.2d 235 (1978); 3 Valuation and Distribution of Marital Property, § 45.23 (J. McCahey, ed. 1985 & Supp.1990); Skoloff, How to Evaluate and Distribute Employee Benefits in a Divorce, Nat'l L.J., Feb. 13, 1984 at 25; 3 Family Law and Practice, supra, § 37.07[4][c], at 37-102.
An alternative method is to determine a "fixed percentage" for the non-employee spouse of any future payments the employee spouse receives under the plan, payable as, if and when paid to the pensioner. Under this approach, it is not necessary to determine the value of the pension fund. Instead, as a general rule, the percentage is based on a fraction arrived at by dividing the length of time worked under the plan during marriage by the total length of time worked toward earning the pension. Hatcher v. Hatcher, 129 Mich.App. 753, 343 N.W.2d 498 (1983); Janssen v. Janssen, 331 N.W.2d 752 (Minn.1983); In re Marriage of Fairchild, 110 Ill.App.3d 470, 66 Ill.Dec. 131, 442 N.E.2d 557 (1982); Johnson v. Johnson, 131 Ariz. 38, 638 P.2d 705 (1981); Copeland v. Copeland, 91 N.M. 409, 575 P.2d 99 (1978); Golden, supra, § 6.16; 3 Family Law and Practice, supra, § 37.07[4][d].
The procedure for arriving at the fraction used in calculating the fixed percentage has been referred to by various names: the "time rule"; the "marital fraction"; the "coverture fraction"; the "reduction fraction". Fondi v. Fondi, 106 Nev. 856, 802 P.2d 1264 (1990); Gemma v. Gemma, 105 Nev. 458, 778 P.2d 429 (1989); Richardson v. Richardson, 307 Or. 370, 769 P.2d 179 (1989); McDermott v. McDermott, 150 Vt. 258, 552 A.2d 786 (1988); In re Marriage of Grubb, 745 P.2d 661 (Colo. 1987); Laing v. Laing, 741 P.2d 649 (Alaska 1987); Braderman v. Braderman, 339 Pa.Super. 185, 488 A.2d 613 (1985); Berry v. Berry, 647 S.W.2d 945 (Tex.1983); Woodward v. Woodward, 656 P.2d 431 (Utah 1982); In re Marriage of Brown, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976) (In Bank); Flynn v. Flynn, 341 Pa.Super. 76, 491 A.2d 156 (1985); 2 Valuation and Distribution of Marital Property § 23.02[4], 23-18 (J. McCahey, ed. 1990); 3 Valuation and Distribution of Marital Property, supra, § 45.06[5]. Under our community property system the portion of the pension attributable to the community may be referred to as the "community fraction".
In using the present value method, the court calculates the present cash value of the community or marital property benefits *125 and awards to the non-employee spouse his or her rightful share in a lump sum or in the form of equivalent property. With the fixed percentage method the formula for the division is determined at the time of the decree but the court may reserve jurisdiction and delay actual division until the pension payments are received. Richardson v. Richardson, supra; McDermott v. McDermott, supra; Johnson v. Johnson, supra; Bloomer v. Bloomer, supra; 3 Family Law and Practice § 37.07[4][c], supra.
Many courts maintain that the present value method is to be preferred if the pension rights can be valued accurately and if the marital estate includes sufficient equivalent property to satisfy the claim of the non-employee spouse without undue hardship to the employee spouse. Fondi v. Fondi, supra; Gemma v. Gemma, supra; Johnson v. Johnson, supra; Skill v. Shill, 100 Idaho 433, 599 P.2d 1004 (1979); Kikkert v. Kikkert, supra; Damiano v. Damiano, 94 A.D.2d 132, 463 N.Y.S.2d 477 (1983); 3 Family Law and Practice, supra, § 37.07[4][b]. On the other hand, the fixed percentage method is called for when the calculation of the present value of benefits will be too speculative. Johnson v. Johnson, supra; Flynn v. Flynn, 341 Pa.Super. 76, 491 A.2d 156, 164 (1985) (Beck, J., separate opinion); Miller v. Miller, 140 Ariz. 520, 683 P.2d 319 (Ct.App.1984); Hatcher v. Hatcher, 129 Mich.App. 753, 343 N.W.2d 498 (1983); Janssen v. Janssen, 331 N.W.2d 752 (Minn.1983); Oberle v. Oberle, 355 N.W.2d 210 (Minn.Ct.App.1984); Majauskas v. Majauskas, 61 N.Y.2d 481, 474 N.Y.S.2d 699, 463 N.E.2d 15 (1984); Rodgers v. Rodgers, 98 A.D.2d 386, 470 N.Y.S.2d 401 (1983); 3 Family Law and Practice, supra, § 37.07[4][d].
Reference to the comparative materials cited in this opinion and the attached appendix may be helpful to a trial court in valuating and dividing the community interest in a pension right. In observing and gaining insights into the techniques of other jurisdictions, however, the court must take into account any relevant differences between other institutions and our own.

4. Dividing the Pension in the Present Case
In the present case, the trial court was confronted with the problem of dividing the community portion of an employee spouse's fully matured defined benefits pension. This task was complicated by the fact that the pension had been overlooked and omitted from a previous partition of community assets. The community was terminated in 1975 by judgment of separation of bed and board retroactive to the date on which the petition for same was filed. La.Civil Code art. 159. But because of the omission, the former spouses continued to be owners in indivision of the community pension asset. The present partition action was brought in 1988 after the former husband retired and began to draw matured pension benefits.
The trial court in effect classified and divided the pension by using a fixed percentage method, considering itself bound to award the wife one half of a fixed fraction of all past and future retirement payments according to the formula set forth in Sims v. Sims, 358 So.2d 919 (La. 1978). Under that formula the community portion of the pension right is deemed to be the same fraction that results when the length of the employee spouse's creditable employment during the community is divided by the length of his total creditable employment. We see no abuse of discretion or reversible error in the trial court's use of a fixed percentage approach, although, as we will explain, some adjustment of the formula may be necessary in order to prevent inequity in the present case.
The trial court correctly rejected the husband's proposed method of division, under which the court would have been required to award him the entire pension and grant the wife a lump sum of $15,219 plus legal interest from the date of the termination of the community in lieu of her interest in retirement payments. According to the husband's actuary witness, this amount was equivalent to one-half the paidup deferred annuity contract payable at age 65 that the husband could have obtained had he terminated employment on *126 the date of the termination of the community in 1975. If the husband had left employment then, he would have been entitled to a deferred pension of $952 per month payable in the future when he became 65 years old. According to the actuary, the $952 per month pension payable at age 65 would have had a lump sum equivalent of $30,438 in 1975, if the husband had terminated employment and if the company had chosen to pay a lump sum.
The husband's proposal, which was later adopted by the court of appeal, was legally incorrect and inequitable. The wife owns a present undivided one-half interest in the pension right insofar as it is ascribable to the community. The pension right fully matured in 1988 prior to the commencement or trial of this partition suit. To relegate the wife to a one-half interest in the value that the pension may have had in 1975 long before its maturity would fail to recognize her legal status as the co-owner of an interest in the present fully matured pension. La.Civ.Code arts. 2336, 2369, 2369.1; 2369.1 comment (c). The husband's proposal also conflicts with the procedural requirement that in the partition of community property the court shall value the assets "as of the time of trial on the merits." La.R.S. 9:2801(4)(a).
Moreover, the effects of the husband's proposal would be profoundly inequitable. If the wife's interest in the pension were valuated as of 1975, instead of after its maturity and at the time of the partition trial, she would be deprived of the substantial appreciation in value of her interest that occurred after 1975. As of that date the pension right was not fully developed and was subject to several contingencies that might have prevented its maturation, e.g., the employee spouse's mortality and termination of his employment. Consequently, the value of the unmatured pension right in 1975, which reflected a heavy discount because of these contingencies, was significantly less than the value of the pension right in 1988, which had survived all contingencies to become fully matured. Thus, the husband's proposal would have deprived the wife of the equal share of the pension ascribable to the community to which she was due, and, by the same token, would have created a windfall for the husband by allowing him to retain the fully matured pension right attributable to the community while paying the wife substantially less than one-half of its actual matured value.
For all these reasons, the trial court concluded that the fixed percentage method was preferable to the husband's inequitable and legally incorrect approach. In the absence of an acceptable alternate proposal with supporting evidence, we find no abuse or error in the trial court's selection of the fixed percentage method as a basic approach to partition.
We disagree, however, with the trial court's conclusion that a partitioning court is bound to use the fixed percentage method in every case analogous to Sims. In Sims this court required the trial court to apply a fixed percentage formula to determine the wife's interest in any retirement payments if and when they became due in the future. In doing so, however, we did not say that the fixed percentage method is the only technique that may be applied to divide pension benefits.
The Sims court added, perhaps unnecessarily, that
[T]he community interest in the retirement plan has no immediate redeemable cash value. Until the employee is separated from the service, dies, retires or becomes disabled, no value can be fixed upon his right to receive an annuity or upon lump-sum payments or other benefits to be paid on his account.
Sims v. Sims, supra at 923.
In retrospect, the statement was unfortunate. If it was intended to signify that the employer could not be required to pay benefits until due under its contractual obligation, the statement was correct but ambiguous. But if it was meant to indicate that a pension right could not be valuated for purposes of voluntary or judicial partition prior to maturity the statement must be acknowledged as error.
Neither the Civil Code nor La.R.S. 9:2801 contains anything that requires courts to *127 follow the fixed percentage method to the exclusion of others. In fact, La.R.S. 9:2801, which was enacted subsequent to Sims affords the partitioning tribunal a great deal of flexibility and clearly implies that the goals of equality and equity require that no one method should be used to the exclusion of other apportionment techniques. Moreover, our study of legal developments both here and in other jurisdictions convinces us that because of the great variations in pension plans and communal situations no one method can accomplish justice in every case. It is essential, therefore, that courts be able to take advantage of reasonable alternatives and adjustments in order to accomplish an equal distribution in an equitable manner in all situations. McDermott v. McDermott, 150 Vt. 258, 552 A.2d 786 (1988); In re Marriage of Rogers, 45 Or.App. 885, 890, 609 P.2d 877, 882, mod. 47 Or.App. 963, 615 P.2d 412, mod. 50 Or.App. 511, 623 P.2d 1108 (1988); Gregory, The Law of Equitable Distribution § 5.05[1], supra; see generally, Thiede, The Community Property Interest of the Non-Employee Spouse in Private Employee Retirement Benefits 9 U.S.F.L.Rev. 635 (1975); Comment, Retirement Equity Inaction: Division of Pension Benefits upon Divorce in Louisiana, 48 La. L.Rev. 675 (1988); Comment, Distribution of Pension Benefits in Marital Dissolutions: Determining the Time and Valuation of the Community Interest, 24 Santa Clara L.Rev. 999 (1984) [hereinafter "Distribution of Pensions"].
Regrettably, the ambiguous or mistaken statement in Sims may have prevented the trial court in the present case from making a needed adjustment to the community fraction. There are some cases in which a mechanical application of the community fraction in calculating the community's portion of the pension benefits will not lead automatically to a correct or equitable result. In such cases, an application of the rule may be inappropriate or require some modification in order to be equitable. The trial court felt intuitively that a rigid enforcement of the community fraction would be unfair in the present case but nevertheless decided that no alternative was permitted by the Sims opinion.
The community fraction does not take into consideration that most pension plans do not accrue at a fixed rate throughout a career. Consequently, the fraction may not always accurately reflect the relative community and separate components when there have been post-divorce increases to the pension benefits retirement due to high separate earnings in the employee spouse's late employment years. Fondi v. Fondi, supra; Gemma v. Gemma, supra; Distribution of Pensions, supra at 1009. It is assumed, however, that, in most cases, any underrepresentation of the employee spouse's post-divorce input toward pension benefits will be offset by another factor.
In theory an employee's acquisition of a pension right in the early years of employment during marriage, even though based on a smaller salary, may be actually worth more than his enhancement of that right during the post-divorce years, due to the longer period of accumulated interest and investment income prior to the commencement of benefit payments. Fondi v. Fondi, supra; Gemma v. Gemma, supra; Judd v. Judd, 68 Cal.App.3d 515, 137 Cal. Rptr. 318 (1977); In re Marriage of Anderson, 64 Cal.App.3d 36, 134 Cal.Rptr. 252 (1976); Distribution of Pensions, supra at 1010. Another rationale is that the services rendered by the nonemployee spouse to the community during the early, low paid years of the employee spouse's employment provide the foundation for the post-divorce escalation of pension benefits and thereby usually justify applying the community fraction to the entire pension benefit including any increases after divorce. H. Ross, M. Projector & L. Jacoby, Handling Retirement Plans in Marriage Dissolution, app. A2 at 19 (1977). In other words, a brick at the bottom of a wall may be more important to its stability than quite a few near the top.
Nevertheless, there will be unusual cases in which a substantial part of the increased retirement benefits earned by the employee spouse after divorce will not result from a foundation provided by prior community *128 earnings. Fondi v. Fondi, supra; Gemma v. Gemma, supra. In such cases, the partitioning court should select a more equitable method or modify the community or marital fraction rule to attribute that part of the post-divorce increase to the employee spouse separately. Although the emerging jurisprudential precepts are not yet well defined, some factors may be identified as helpful guidelines in determining when such a modification is required. Distribution of Pensions, supra at 1010.
In general, the partitioning court should inquire as to whether a substantial post-community increase is due to personal effort or achievement after the termination of the community that has little or no relationship with the prior community. The community should not be given credit when a substantial post-community increase to a retirement fund is due to a singular personal factor such as individual effort, education or achievement resulting in a merit raise or an extraordinary promotion or series of promotions. For example, such an increase in benefits might occur where the employee spouse attains a significantly higher-paying position while remaining within the coverage of the same pension plan, either through earning a post-community degree, or transfer within the company to an unrelated area of service. Fondi v. Fondi, supra; Gemma v. Gemma, supra. Such increases are not "acquired during the existence of the legal regime through the effort, skill, or industry of either spouse" are not fairly ascribable to the community and should not be considered community property. La.Civ.Code arts. 2338. On the other hand, when such an increase results from nonpersonal elements such as longevity raises, cost-of-living raises, forfeitures by terminated employees, and investment returns, the community should participate in that gain. See La.Civ. Code arts. 2340; Distribution of Pensions, supra at 1015. Drawing the line in this manner is consistent with the codal scheme for classification of property as community or separate, is fair, and is consistent with the reasonable expectations of the parties. The employee spouse should expect to profit individually from his extraordinary personal industry after divorce, and the nonemployee spouse is entitled to expect to share in the benefits earned by his or her investment in the community. Id.
When an employee spouse believes that the income he or she will receive on retirement contains a substantial increment ascribable to his or her personal effort or achievement after termination of the community, that spouse may request the court to adjust the community fraction to credit his or her separate property with that increment. Should the trial court agree that the pension was increased due to the employee spouse's personal effort or achievement, benefits may then be reallocated using the highest income the employee spouse would have received under the normal course of events, including ordinary promotions and cost increases and gains due to non-personal factors. Because the employee spouse is generally in a position of superior knowledge and is attempting to prove the unusual or unlikely case, the burden of going forward with evidence and of persuasion on this issue properly should be assigned to the employee spouse. McCormick on Evidence § 337 (E. Cleary 3d ed. 1984).
Thus, for the courts the process may be viewed as a winnowing of increments of post-community increases in the employee spouse's earnings for the purpose of determining whether the increases are due purely to personal merit. First, the increment must represent a fairly substantial increase in the employee spouse's post-community earnings. Second, the increment must not be due to a non-personal factor, such as cost-of-living raises, etc. Third, the increment must be attributable to the employee spouse's meritorious individual efforts or achievements. Moreover, since the employee spouse has the burden of production of the evidence and persuasion, cases of doubt should be resolved in favor of the community and against the employee's spouse's separate estate or subsequent marital community.
In the present case, the evidence suggests that the employee spouse's skill and *129 industry were a major factor in causing his earnings to increase markedly following the termination of the community. His annual earnings increased from about $47,000 in 1975 at the end of the community to an average of almost $86,000 in his last three years of employment in 1985-88. During this period he was promoted from territorial manager of his employer's southern region to divisional manager of sales nationwide. According to the husband's expert actuary witness, his raises in pay outstripped the increase in cost of living and were attributable to promotions and sales and production bonuses. The actuary testified that an application of the community fraction rule in this case might be inappropriate because it could lead to an unmerited enhancement of the community's interest in the retirement benefits. The court appointed expert in the valuation of pension plans, on the other hand, testified that any distortion caused by use of the community fraction rule would be offset by countervailing factors. For lack of incisive interrogation, however, each expert's testimony in this regard was conclusory rather than explicative.
From the record presented for our review, we cannot determine which of the husband's post-community increases in compensation, if any, was due purely to his personal effort or skill and unrelated to the prior community earnings. Evidently, the trial court and the parties were under the impression that the opinion of this court in Sims v. Sims inflexibly required the application of the fixed percentage method along with the community fraction rule as its integral part in the present case without any adjustment or modification. Consequently, although the trial court and counsel expressed some concern about a possible inequitable distortion that might result from use of the formula, they did not pursue the potential inequity as a genuinely material issue.
Accordingly, we are unable to determine justly whether the partition effected by the trial court divided the community interest in the pension equally and in an equitable manner between the former spouses. Moreover, it would not be just or equitable for us to resolve the issue here by merely applying the burden of proof rule newly announced in the present case, without allowing the parties to litigate the issue. Very few other courts or writers have dealt with the problem, and the parties before us reasonably could have concluded that the Sims decision prevented the trial court from adopting any modification to remedy inequity produced by application of the community fraction.
For the foregoing reasons, the judgment of the court of appeal is reversed and vacated to the extent that it partitioned the community pension right. To the extent that the court of appeal judgment affirmed the trial court's decision to overrule the exceptions of res judicata and prescription, however, it is affirmed. The case is remanded to the trial court with a direction to render a new partition judgment after conducting further proceedings to determine whether the community fraction rule underlying the fixed percentage method applied herein should be modified to reflect that some of the post-community increases in earnings by the employee spouse should be attributed solely to his personal effort or skill and not related to the prior community earnings.
COURT OF APPEAL JUDGMENT AFFIRMED IN PART, REVERSED IN PART; CASE REMANDED TO TRIAL COURT TO CONDUCT FURTHER PROCEEDINGS TO DETERMINE WHETHER THE METHOD OF DIVIDING COMMUNITY PROPERTY SHOULD BE MODIFIED AND TO RENDER JUDGMENT ACCORDINGLY.

APPENDIX

I. Treatises and Textbooks
I. Baxter, Marital Property (1973 & Supp. 1991).
Family Law and Practice, (A. Rutkin, ed. 1990).
B. Goldberg, Valuation of Divorce Assets (1984 & Supp.1987).
L. Golden, Equitable Distribution of Property (1983 & Supp.1990).
*130 J. Gregory, The Law of Equitable Distribution (1989).
W. McClanahan, Community Property Law in the United States (1982 & Supp.1990).
H. Ross, M. Projector & L. Jacoby, Handling Retirement Plans in Marriage Dissolution (1977).
M. Snyder, The Value of Pensions in Divorce: What It Is and How to Use It (1989).
K. Spaht & L. Hargrave, Matrimonial Regimes, 16 Louisiana Civil Law Treatise (1989).
Valuation & Distribution of Marital Property (J. McCahey, ed. 1990).

II. Law Reviews and Commentary

A. Practitioners and Teachers
Arruebarrena, Applying Louisiana's Community Property Principles to Pensions, 33 Loy.L.Rev. 241 (1987).
Blumberg, Marital Property Treatment of Pensions, Disability Pay, Workers' Compensation, and Other Wage Substitutes: An Insurance, or Replacement, Analysis, 33 U.C.L.A. L.Rev. 1250 (1986).
Brown, An Interdisciplinary Analysis of the Division of Pension Benefits in Divorce and Post-Judgment Partition Actions: Cures for the Inequities in Berry v. Berry, 39 Baylor L.Rev. 1131 (1987).
Brown, Berry v. Berry and the Division of Pension Benefits in Divorce and Post-Judgment Partition Actions, Community Prop. J., April 1986, at 30.
Bruch, The Definition and Division of Marital Property in California: Towards Parity and Simplicity, 33 Hastings L.J. 769 (1982).
Cohen & Hennessey, Valuation of Property in Marital Dissolutions, 13 Fam.L.Q. 339 (1989).
Culhane, Toward Pension Equality: A "Death Blow" to California's Terminable Interest Doctrine, Community Prop. J., Summer 1985, at 199.
Dutton, The Wife's Community Interest in Her Husband's Qualified Pension or Profit-Sharing Plan, 50 Tex.L.Rev. 334 (1972).
Freed & Walker, Family Law in the Fifty States: An Overview, 13 Fam.L.Q. 495 (1990).
Hardie and Reisman, Employee Benefit Plans and Divorce: Type of Plan, Date of Retirement, and Income Tax Consequences as Factors in Dispositions, 15 Community Prop. J., July 1988 at 179.
Hopwood, Roberts & Paulsen, Selected Current Issues In Community Property Aspects of Retirement Plans, 39 Baylor L.Rev. 1199 (1987).
Hughes, Community-Property Aspects of Profit Sharing and Pension Plans in TexasRecent Developments and Proposed Guidelines for the Future, 44 Tex.L.Rev. 860 (1966).
Johnson, Retirement Benefits as Community Property in Divorce Cases, 15 Baylor L.Rev. 284 (1963).
Le Van, Allocating Deferred Compensation in Louisiana, 38 La.L.Rev. 35 (1977).
Nordhauser, The Valuation of Defined Benefit Retirement Plan Benefits in Community Property Settlements, Community Prop. J., October 1982, at 299.
Parks, The Equitable Distribution Alternative: A Critical Analysis, Community Prop. J., April 1987, at 17.
Reppy, Community and Separate Interests in Pensions and Social Security Benefits After Marriage of Brown and ERISA, 25 U.C.L.A. L.Rev. 417 (1978).
Schwartz, Divorce and Taxes: New Aspects of the Davis Denouement, 15 U.C.L.A. L.Rev. 176 (1967).
Skoloff, How to Evaluate and Distribute Employee Benefits in a Divorce, Nat'l L.J., Feb. 13, 1984.
Solomon, Beyond Preemption: Accommodation of the Nonemployee Spouse's Interest Under ERISA, 31 Hastings L.J. 1021 (1980).
Sterling, Division of Pensions: Reserved Jurisdiction Approach Preferred, Community Prop. J., Winter 1984, at 17.
Thiede, The Community Property Interest of the Non-Employee Spouse in Private Employee Retirement Benefits, 9 U.S.F.L.Rev. 635 (1975).
Troyan, Some Thoughts on Kalinoski, 3 Equitable Distr.Rptr. 109 (April 1983).
*131 Weisel, Defining Property: What's Marital Property and What's Not, Divorce Litigation: Custody, Property, Support, (Aug. 1989).
Weisel, Pensions: Valuation, QDROs, Future Interests, Etc., Divorce Litigation: Custody, Property, Support, (Apr. 1989).
Woldman, Berry v. Meadow: Division of Contingent Pension Benefits in New Mexico, Community Prop.J., Oct. 1986, at 73.

B. Student Notes and Comments

Comments
Comment, Pensions as Marital Property: Valuation, Allocation and Related Mysteries, 16 Creighton L.Rev. 743 (1983)
Comment, Retirement Equity Inaction: Division of Pension Benefits Upon Divorce in Louisiana, 48 La.L.Rev. 677 (1988)
Comment, Distribution of Pension Benefits in Marital Dissolutions: Determining the Time of Valuation of the Community Interest, 24 Santa Clara L.Rev. 999 (1984)
Comment, The Relation of Community Property and Forced Heirship to Employee Retirement Plans, 51 Tul.L.Rev. 645 (1977)

Notes
Note, Pension Rights as Marital Property: A Flexible Approach: Kuchta v. Kuchta, 48 Mo.L.Rev. 245 (1983)
Note, In Re Marriage of Brown: Every Family Lawyer Knows What It's Done Do You Know What It Can Do?, 4 Pepperdine L.Rev. 147 (1977)
Note, Vested But Unmatured Pensions as Marital Property: Inherent Valuation, Allocation and Distribution Problems in Equitable Distributions, 14 Rutgers L.J. 175 (1982)
Note, FAMILY LAW-Community Property-Private Retirement Benefits Earned During Marriage Characterized as Community Property And Do Not Automatically Remain Property of Surviving Spouse: Allard v. French, 20 St. Mary's L.J. 373 (1989)