635 So.2d 483 (1994)
W.T. KILLGORE, Plaintiff-Appellant,
v.
Yvonne KILLGORE, Defendant-Appellee.
No. 25673-CA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1994.
Jerry Kircus, Shreveport, for plaintiff-appellant.
William G. Nader, Shreveport, for defendant-appellee.
Before SEXTON, WILLIAMS and PRICE, Ad Hoc, JJ.
PRICE, Judge Ad Hoc.
This suit involves the partitioning of a community pension right. W.T. Killgore died while his appeal from the trial court judgment granting Yvonne Killgore 41.5 percent of his pension rights was pending, and his succession's executrix, his second wife, Gloria Jones Killgore, was substituted for him.

FACTS AND PROCEDURAL HISTORY
W.T. and Yvonne Killgore married on July 4, 1952. Mr. Killgore, who had been employed by SWEPCO since 1946, joined its retirement plan in 1953. The community of acquets and gains was terminated on August 12, 1980, with the filing of a petition for legal separation by W.T. Killgore. Killgore retired on January 1, 1986, at age 62.
Applying a fixed percentage method to partition the retirement benefits in accordance with Sims v. Sims, 358 So.2d 919 (La.1978), the trial court concluded that Yvonne Killgore was entitled to 41.5 percent *484 of W.T. Killgore's pension benefits. Mr. Killgore appealed the trial court judgment, contending that the largest portion of benefits were earned after termination of the community.
On appeal, we reversed the trial court judgment and remanded this case for a determination of whether the method used by the trial court to divide the community property should be modified in light of Hare v. Hodgins, 586 So.2d 118 (La.1991), which was decided after the trial court judgment was rendered. On remand, the trial court reinstated its original judgment, stating "[T]he plaintiff, W.T. Killgore, has not proved that his pay raises were substantial or meritorious."

DIVISION OF COMMUNITY PENSION RIGHTS
An employee's contractual pension right is an earned property interest. To the extent that the right derives from the spouse's employment during the existence of the marriage, it is a community asset subject to division upon dissolution of the marriage. Hare v. Hodgins, supra, citing CC Art. 2338; Sims v. Sims, supra; and T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976).
When a pension right is earned partly during the community, and partly not during the community, as is the case here, the process of classification begins at the termination of the community and continues until a partition of that asset is effected. Hare v. Hodgins, supra.
An employee's acquisition of a pension right in the early years of employment during marriage, even though based on a smaller salary, may be actually worth more than his enhancement of that right during the post-divorce years. Hare v. Hodgins, supra. The court in Hare did, however, recognize that:
[T]here will be unusual cases in which a substantial part of the increased retirement benefits earned by the employee spouse after divorce will not result from a foundation provided by prior community earnings. (Emphasis added).
586 So.2d at 127-128.
The supreme court in Hare further stated:
[F]or the court the process may be viewed as a winnowing of increments of post-community increases in the employee spouse's earnings for the purpose of determining whether the increases are due purely to personal merit. First, the increment must represent a fairly substantial increase in the employee spouse's post-community earnings. Second, the increment must not be due to a non-personal factor, such as cost-of-living raises, etc. Third, the increment must be attributable to the employee spouse's meritorious individual efforts or achievements. Moreover, since the employee spouse has the burden of production of the evidence and persuasion, cases of doubt should be resolved in favor of the community and against the employee's spouse's separate estate or subsequent marital community.
586 So.2d at 128.
Has the employee spouse experienced a substantial post-community increase in earnings?
Killgore earned $27,551 in 1980, and $40,116 in 1985 when he retired. If he would have retired on August 12, 1980, when the community was terminated, at age 62, he would have received $663.26 each month ($427.96 basic benefit and $235.30 supplement) until his death which occurred in September 1993. Because he did not retire until 1985, his benefit amounted to $1,311.48 per month.
Appellant contends that the trial court erred in holding that an increase in earnings of 45.6 percent, or $12,565 in a five-year period was not substantial. The trial court noted the increase in Killgore's salary between 1980 and 1985, stating that this was "a large sum of money," but concluded that "Mr. Killgore's pay increases were in accordance with previous years and not unusual or `substantial'." Between 1975 and 1980, he had a 47.63 percent salary increase, and between 1970 and 1975, he had a 43.51 percent salary increase.
We do not find that the trial court was clearly wrong in its conclusion that the increase *485 in Killgore's earnings between 1980 and 1985 were not necessarily substantial. Nevertheless, the trial court considered and we will discuss why Killgore received these salary increases.
Is the increase in earnings due to non-personal factors or attributable to the employee spouse's meritorious individual efforts or achievements?
The community should not be given credit when a substantial post-community increase to a retirement fund is due to a singular personal factor such as individual effort, education or achievement resulting in a merit raise or an extraordinary promotion or series of promotions.... On the other hand, when such an increase results from nonpersonal elements such as longevity raises, cost-of-living raises, forfeitures by terminated employees, and investment returns, the community should participate in that gain.

Hare, supra, at 128.
Examples listed in Hare, supra, where the community should not be credited for an increase to a retirement fund are
where the employee spouse attains a significantly higher-paying position while remaining within the coverage of the same pension plan, either through earning a post-community degree, or transfer within the company to an unrelated area of service.

Id. at 128.
Killgore's supervisor at SWEPCO, R.A. Baker, testified by deposition that Killgore's salary was increased each year between 1980 and 1985, and any salary increases were due solely to his meritorious efforts and not simply cost of living raises. The trial court noted this testimony, but also considered the fact that Killgore was not given any promotions between 1980 and 1985. Additionally the court observed that each year SWEPCO employees were evaluated to determine if they got a raise, and that Killgore received a salary increase in 1984 in spite of a poor evaluation. The court concluded that, other than intercompany training courses, Killgore did not further his education or receive any specialized training. The court found the annual pay raises reflected the same pattern before and after the community was terminated, and because Killgore was a loyal employee with a good record, he received these salary increases.
We do not find that the trial court was clearly erroneous in concluding that Killgore failed to carry the burden of proving that the salary increases were substantial or meritorious, or anything more than longevity raises.

DECREE
At appellant's cost, the trial court judgment is AFFIRMED.