jiGUIDRY, Chief Judge.
This is an action to partition community property belonging to Darwin Thibodeaux, plaintiff-appellee, and his former wife, Suzette Thibodeaux, defendant-appellant. The issues on appeal concern the trial court’s application of the Sims[1] formula partitioning Darwin’s retirement plan and its denial of Suzette’s claim for reimbursement based on Darwin’s alleged mismanagement of his retirement plan. Finding no error, we affirm.

FACTS

Darwin and Suzette were married on October 17, 1986. At the time of their marriage, Darwin was employed by B, E, and K Construction Company (BEK) and had been participating in the company’s “Profit Sharing Retirement Plan” since 1979. On April 30, 1990, Darwin filed suit for legal separation. *715 On September 19, 1990, the court issued reciprocal preliminary injunctions prohibiting the encumbrance or disposition of community property. On April 23, 1991, Darwin filed a petition for divorce. The court rendered judgment on November 26, 1991 granting a divorce and decreeing the community property regime dissolved retroactive to April 30, 1990.
On the same day that the judgment was rendered, Suzette filed a contempt rule alleging that Darwin violated the aforementioned injunction by transferring funds within the retirement plan to the prejudice of Suzette. The transfer from one fund to another within the retirement plan occurred on September 28,1990, nine days after the court issued the injunction. On that date, Darwin transferred $65,301.31 from the Windsor II stock'mutual fund to the Vanguard money market (VMMR) fund. Under the terms of the retirement plan, which was administered for BEK by the Vanguard Group, Darwin, as a participant, had discretion to place his money into any one of three funds. No hearing on this contempt rule was ever held.
On April 6, 1992, Darwin filed a petition seeking to partition community property and attached thereto a detailed descriptive list. The next day, Suzette filed her own petition seeking a partition with a detailed descriptive list attached.
Trial of this matter was held on August 12, 1992. During trial, Suzette’s counsel stated that the contempt rule was being abandoned in favor of an action for reimbursement of losses she allegedly sustained as a result of Darwin’s September 28, 1990 transaction. Darwin was the only witness to testify. He stated that, from 1979 until October, 1984, he participated in the company retirement plan by contributing after-tax dollars. Each year during this five year period, BEK would also contribute a portion of the company’s profits into the retirement plan. In October, 1984, BEK began a 401(K) plan, which allowed him to contribute up to 15% of his pre-tax income to the retirement plan. The company would match 50% |3of the first 3% contributed and 25% of the next 3% contributed. This process continued until some point in early 1989, when Darwin’s participation in the retirement plan was terminated due to BEK’s noncompliance with anti-discriminatory regulations. Thereafter, he could voluntarily contribute after-tax dollars to the retirement plan but chose not to do so. The value of Darwin’s investment in the retirement plan was increased after early 1989 only through the contribution of company profits and the return on investment.
The retirement plan allowed the participant to direct the course of his investment on the basis of relative risk. Vanguard offered three investment choices to investors, namely: VMMR, a money market fund; the Wellington fund, a combination money mar-kei/stock fund; and, the Windsor II fund, a stock mutual fund. Darwin stated that, on the date of dissolution of the community, he was investing half of his money into VMMR and the other half into Windsor II. With regard to the September 28,1990 transfer of $65,301.31 from Windsor II to VMMR, he explained that the transaction was not intended to reduce the value of Suzette’s proportionate share of the retirement plan. Darwin did this because, over the prior quarter, the value of his Windsor II investment had suffered a substantial loss in excess of $10,000. He executed the transfer within the retirement plan in an effort to salvage the value of the investment by placing it into the more conservative and less volatile VMMR fund. On cross-examination, Suzette’s counsel asserted that the value of Windsor II stock shares had increased from $12.21 per share on the transfer date to $15.76 per share as of the date of trial. This difference ($3.55 per share) times the total number of shares transferred (5,511.614) constituted the value of her reimbursement claim. Suzette, however, did not show how the transferred money performed in the VMMR fund.
Vanguard documents entered into evidence establish |4the value of the retirement plan on the date of marriage as $73,457.12. On April 30, 1990, the date of community dissolution, the value of the retirement plan was $145,044.81.
The trial judge rendered written reasons for judgment on September 15,1992, wherein he disposed of these and numerous other *716 property issues between the parties. The judge reasoned that the retirement plan was a community asset which should be divided according to the Sims formula. He specifically rejected Suzette’s contention that the retirement plan should be treated as a typical savings account or investment plan. According to the court, Suzette failed to explain or provide authority for this distinction and the inapplicability of Sims. In his reasons, the judge deferred the calculation of Suzette’s proportionate share pending presentation of evidence sufficient to perform the calculation, which would be incorporated into the judgment. As for Suzette’s reimbursement claim, the court found that Darwin had not acted imprudently or mismanaged the assets in the retirement plan. Darwin’s purpose, the court determined, was to salvage the value of the retirement plan by placing the money into a less risky fund (VMMR) after the more risky fund (Windsor II) had lost significant value in the prior quarter.
On December 22, 1992, the court signed a judgment which, in part, recognized Suzette’s 15.858% continuing ownership interest in the retirement plan as of the date of termination of the community. This amount, using the Sims formula, was calculated as follows:
Portion of Pension attributable to creditable service during existence of community _ x ½ x Pension attributable to total creditable service annuity (or lump sum payment)
42.5 mos. _ x ½ = 15.858% 134 mos.
Additionally, the court incorporated into the judgment its determinations that Darwin did not mismanage this community asset by executing the September 28, 1990 transfer.
Suzette applied for a new trial on six contested issues which included her proportionate share of the retirement plan and her claim for reimbursement. In written reasons rendered on April 28, 1993, the court denied a new trial on these issues. The court signed a supplemental judgment on May 17, 1993.
Suzette appeals. She contends that Hare v. Hodgins, 586 So.2d 118 (La.1991) mandates that, in this particular case, a modification of the Sims formula is necessary to avoid inequitably diluting her proportionate share of the retirement plan. Suzette suggests that a more equitable result would be derived by dividing the growth in the retirement plan value during the existence of the community ($71,587.69) by the total value of the retirement plan at the end of the community ($145,044.81) and multiplying by her one-half share. This would result in an increase in her proportionate share to 24.68%. She also asserts that the trial court erred in denying her reimbursement claim.

OPINION

It is well settled that the valuation and division of pension rights pursuant to La.R.S. 9:2801 is a matter in which the trial court is vested with discretion. Hare, supra. In Hare, the parties were married in 1951 and the husband began employment in 1956. In 1975, they separated and the community terminated. A 1977 partition did not mention nor dispose of rights in the husband’s pension plan. Final divorce was granted in 1978. The husband retired in 1988 and began drawing $4,037.76 per month in retirement benefits. Within one month of the husband’s retirement, his former wife filed suit for her share of the pension.
The Supreme Court found no error or abuse of discretion in the trial court’s application of the Sims “fixed percentage” lamethod of partition. However, the court declared further that the Sims decision did not mandate the use of the fixed percentage method in every case. Hare presented a situation in which the value of the employee spouse’s pension increased dramatically after dissolution of the community regime while *717 the former spouses remained co-owners thereof. The husband argued that this increase in value was attributable to his post-community individual effort and achievement as opposed to non-personal reasons such as longevity or cost-of-living raises, forfeitures by terminated employees and investment returns. The Supreme Court stated that, in the former situation, the community should not be given credit for the increased value whereas, in the latter situation, the community should participate in the gain. The court remanded the case for consideration of whether the Sims formula should be modified on sufficient proof of the husband’s post-community individual efforts directly causing the increased value.
Although the factual and procedural circumstances of Hare are clearly distinct from the present case, it is controlling because the result sought, partition of a retirement plan, is the same. Unlike in Hare, in the present case, the non-employee spouse seeks to apply a modified Sims formula because she contends the retirement plan’s largest increases in value occurred during the existence of the community. It is important to note that the Supreme Court did not reject or even look with disfavor upon the Sims formula, but, instead, established that use of the Sims formula is not rigidly mandated for every similar case. In this appeal, Suzette desires to be awarded the present value of her proportionate interest in the retirement plan based upon her proposed modification of the Sims formula (Increased Value During Community/Total Value of Plan). She asserts that this formula is more equitable given the rapid rise in value during the community resulting from Darwin’s voluntary 401(k) contributions and BEK match contributions. She also wishes tyto take her proportionate share from Darwin’s investment control, which she characterizes as lacking investment acumen.
After a thorough review of the record, we conclude that the trial court did not abuse its discretion in applying the Sims fixed percentage formula to the facts of this case. While it is undisputedly true that the retirement plan’s value increased rapidly during the existence of the community, it is equally evident that the majority of this growth occurred during the first two-thirds of the community when Darwin’s pre-tax contributions were matched by BEK up to a predetermined percentage. Thereafter, for the final year and one-third of the community (early 1989 to April 30, 1990), the value of the retirement plan grew demonstrably slower due to Darwin’s disqualification from the BEK 401(k) plan. Clearly, some of the growth in value during the community is also attributable to investment returns earned on the $73,457.12 pre-community value of the plan. The trial judge apparently concluded that the Sims formula provided the more equitable allocation of the community’s efforts in attaining this increased value than did the formula proposed by Suzette. We find no clear error in this conclusion.
As the owner by judgment of this fixed percentage of the retirement plan, Suzette’s fears that her investment remains at the whim of Darwin are unfounded. The effect of the judgment is to prohibit him from being able to move her share of the money in and out of the various funds.[2] She retains |sthe right to collect her share when he begins to collect retirement benefits.
As pertains to the propriety of the September 28, 1990 transfer of funds from Windsor II to VMMR, the possible sanctions for violation of the injunction order are not at issue because of Suzette’s abandonment of her contempt rule. The sole issue is whether Darwin was imprudent in executing the transaction and should be made to account to Suzette for her loss.
*718 Under the circumstances, we conclude that Darwin does not have to reimburse Suzette for her alleged loss for the following reasons. First, as found by the trial court, the transfer was made within the retirement plan in an effort to salvage the value of an investment that had lost nearly $12,000 in the most recent quarter. Darwin prudently placed the money into the less risky VMMR fund. Second, despite the fact that the Windsor II fund rebounded to later increase its value to $15.76 per share, Suzette cannot claim the entire $3.55 per share difference in value as her loss. Her per share loss, if any, is properly calculable as the $3.55 increase less any per share appreciation in value experienced during the period while the money was invested in the VMMR fund. Having failed to show this, she did not carry her burden of proving the alleged loss with sufficient specificity. Third, Suzette presented no evidence that an independent prudent administrator, when faced with such a large quarterly loss, would have left his money in the Windsor II fund.
For these reasons, the trial court’s judgment is affirmed. Suzette Thibodeaux is cast with all costs of this appeal.
AFFIRMED.

. Sims v. Sims, 358 So.2d 919 (La.1978).

. We note that, after trial, Suzette attempted to admit into the record a letter dated January 14, 1993 from the BEK Retirement Committee. The correspondence represented that a lump sum distribution of her proportionate share could be made upon service of a "qualified domestic relations order” as defined by Internal Revenue Code § 414(p). The trial court did not admit the letter, apparently because it lacked the requisite authenticity and constituted hearsay. Having not been specified as error, the propriety of this ruling is not before us on appeal. Through oversight or mistake, however, the letter appears in the record amongst other properly admitted exhibits (Tr. p. 263).