1BYRNES, Judge,
concurring with reasons.
I agree with Judge Plotkin’s analysis of the real meaning of the Sims formula. I hope that if the Supreme Court takes another look at the Sims formula as suggested by Judge Plotkin, that a re-examination of Hare v. Hodgins, 586 So.2d 118 (La.1991) would be conducted at the same time because the two cases are inextricably bound to each other.
Hare at 128 in referring to the post community earnings increases of the employed spouse states that “... when such an increase results from nonpersonal elements such as longevity raises, cost-of-living raises, forfeitures by terminated employees, and investment returns, the community should participate in that gain.” Where a post community “merit raise or an extraordinary promotion” is involved Hare would deny community participation in the gain. Hare explains this by citing LSA-C.C. art. 2338 and stating that pension benefits attributable to post community merit raises and extraordinary promotions are ascribable to the “effort, skill, or industry” of the employed spouse, but post community longevity raises and cost of living increases should |2be treated as fruits of the community under LSA-C.C. art. 2340 in the nature of passive investment income.
To suggest that longevity raises and cost-of living raises are not acquired through the “effort, skill, or industry” of the employed spouse is to denigrate the efforts and industry of what is probably the vast majority of the work force who work very hard for longevity raises and cost of living increases. Such people get up, go to work every day, work industriously hard and long hours, and at great effort. The employee only receives such raises if that employee goes to work and does his/her job. The fact that the employee can expect to receive such raises if he does his job is not the same as saying that he came by the raise other than through his effort or industry. The fact that a raise is calculated according to a fixed formula does not mean that it was not earned through the effort or industry of the employee. The analogy to passive investment income is a casuistry that does not withstand logical analysis. There is nothing in Louisiana community property law that would support the proposition that merit raises fall under LSA-C.C. art. 2338, but longevity raises do not.
If, as I suspect, the result reached in Hare was the result of that court’s “... recognition that a non-employee spouse contributes significantly to the economic well-being of the family”, then I applaud the motives of the court. Hare at 123. However, as the legislature has already acted in this area by enacting LSA-C.C. art. 121, it is inappropriate for the courts to expand the scope of community property beyond what is intended by the legislature regardless of how desirable the goal appears to be in doing so. LSA-C.C. art. |3121 provides:
In a proceeding for divorce or thereafter, the court may award a party a sum for his financial contributions made during the marriage to education or training of his spouse that increased the spouse’s earning power, to the extent that the claimant did not benefit during the marriage from the increased earning power.
The sum awarded may be in addition to a sum for support and to property received in the partition of community property. [Emphasis added.]
The fact that the legislature did not intend more sweeping reforms in recognition of the contributions made by the non-employed spouse than those embodied in LSA-C.C. art. 121 may be seen by reference to the comments under the article which call for a *79 restrictive application of the principle of spousal compensation:
(b) .... This cause of action is not based upon classification of an education or training as community proper-ty_ [Emphasis added.]
* * * * * *
(f) This Article rejects the approach of treating the degree, trade, or license acquired by the supported spouse as marital property subject to distribution.... The second paragraph of this article is intended to make clear that the contemplated award is not spousal support or a disposition of community property. [Emphasis added.]
Thus, the legislature recognized a need for an equitable adjustment in spousal financial relationships under a narrowly described set of circumstances. But the legislature also recognized that this adjustment was incompatible with Louisiana community property concepts and required the creation of a separate category. The concept of recognizing the contributions of the non-employed spouse “to the economic well-being of the family” which l4are largely non-monetary (e.g. the value of housekeeping, cooking, and chil-drearing, etc.) is one that may be long overdue, but it is even more alien to our community property tradition than the concept of reimbursing a spouse for educational expenses under LSA-C.C. art. 121.
By enacting LSA-C.C. art. 121 the legislature has indicated its awareness of these problems, but has chosen to go no further. Therefore, I hope that the Supreme Court will act to eliminate the disparate treatment of merit raises versus longevity raises, and that the legislature will devise a formula to recognize the valuable contribution of the non-employed spouse where alimony and community property awards are found to be inadequate.