BYRNES, Judge.
William and Barbara Croft were married on May 24, 1974. On October 24, 1986 Barbara Croft filed a Petition for Separation. A judgment of divorce was rendered January 8, 1988. This judgment is not contested.
On August 26, 1993 the trial court rendered judgment awarding Ms. Croft 17.4% of Mr. Croft’s disposable military retirement pay. Ms. Croft appeals. Mr. Croft answered the appeal and alternatively moved to remand. We amend and affirm.-
*77 I. Ms. Croft Is Entitled To A Portion Of Mr. Croft’s Military Pension
Mr. Croft argues that Ms. Croft is entitled to no portion of his military pension because the community property settlement judgment of January 8, 1988 did not apportion his military pension. Mr. Croft relies on Wirstrom v. Wirstrom, 608 So.2d 216 (La.App. 5 Cir.1992). That reliance is misplaced. In Wirstrom the community property partition did not address either spouse’s interest in pension accounts. The trial court later allowed the wife to litigate her interest in her husband’s pension plans. The correctness of that ruling was not appealed. Only quantum was appealed in Wirstrom. If there is any implication to be drawn from Wirstrom it is that the parties have the right to litigate pension issues subsequent to a community settlement, where that settlement failed to apportion the pension rights.
Hare v. Hodgins, 586 So.2d 118, 121 (La.1991) is controlling:[1]
“The termination of the community does not have the effect of freezing the value of each spouse’s undivided interest in community assets. Each spouse continues to be a co-owner of the assets until they are partitioned and, as such, is entitled to benefit from any appreciation in their value.” (Emphasis added).
We find no error in the trial court’s decision to allow Ms. Croft to bring this claim.
II. Mr. Croft Failed To Discharge His Burden Of Proof
Ms. Croft seeks to share in Colonel Croft’s increase in retirement benefits resulting from his promotion to colonel. Colonel Croft contends that she is not entitled to share in the increase because his promotion to colonel occurred subsequent to the termination of the community. Ms. Croft counters that Colonel Croft failed to meet his burden of proof that the promotion was not due merely to longevity or to career factors that existed prior to the termination of the community. Hare, supra, at 128.
In Hare the Supreme Court held that: On the other hand, when such an increase results from non-personal elements such as longevity raises, cost-of-living raises,[2] forfeitures by terminated employees, and investment returns, the community should participate in that gain. See La.Civ.Code Arts. 2340 ... (Emphasis added). Hare, supra, at 128.
The Supreme Court in Hare established a three part test:
First, the increment must represent a fairly substantial increase in the employee spouse’s post-community earnings. Second, the increment must not be due to a non-personal factor, such as cost-of-living raises, etc. Third, the increment must be attributable to the employee spouse’s [post community] meritorious individual efforts or achievements. (Emphasis added). Hare, supra, at 128.
In applying these three criteria Mr. Croft failed to meet the burden of proof established by Hare:
Moreover, since the employee spouse has the burden of production of the evidence and persuasion, eases of doubt should be resolved in favor of the community and against the employee’s spouse’s separate estate or subsequent marital community. Hare, supra, 586 So.2d at 128.
Colonel Paul Alford, Chief of Staff, Louisiana National Guard testified that there are 70 to 80 lieutenant colonels in the National Guard, but only 17 or 18 full colonels. There is no evidence or testimony in the record to explain this disparity in numbers. Colonel Croft argues that if a promotion to full colonel were the automatic result of longevity one would expect the number of lieutenant colonels and full colonels to be more nearly equal. Therefore, he contends that we should conclude that his promotion to colonel *78 was exceptional. The disparity in numbers could just as easily be explained by the retirement or separation from service for countless reasons by lieutenant colonels who just did not hang on long enough to become full colonels.
In response to questioning by Ms. Croft’s attorney, Colonel Alford responded: “If you are telling me or insinuating that you get positions because of years of service, the answer is no.”
Colonel Croft contends that this statement by Colonel Alford is proof that his promotion to colonel was not due to longevity, but to post community meritorious individual efforts or achievements.
Even if this isolated statement by Colonel Alford were proof that Colonel Croft’s promotion was not the result solely of longevity, it is not proof that Colonel Croft’s promotion was the result of post-community meritorious individual efforts or achievements. Hare, supra, at 128. Colonel Alford was speaking only in generalities. It is clear from Colonel Alford’s testimony that he had no personal knowledge of the circumstances surrounding Colonel Croft’s promotion.
Colonel Croft submitted no material evidence to prove that his promotion to colonel was the result of his post-community meritorious individual effort or achievement. The only post-community achievement he could point to other than longevity medals was the “Distinguished Service” medal. However, on cross-examination he was asked:
Q. Now, tell the Judge, if you will, is it a requirement for a promotion, to [colonel] that you have the Distinguished Service medal?
A. Not to my knowledge.
Colonel Croft never testified that this medal had anything to do with his promotion.
We conclude from the balance of Colonel Croft’s testimony that the foundation on which his career advance as a military officer was based was laid during the existence of the community. Hare, supra, at 127.
Finally, Colonel Croft failed to show a substantial increase in post-community earnings as a result of his promotion to colonel. He testified that on October 24,1986 his base pay as a lieutenant colonel was $3,515.00 per month. However, he failed to relate this figure to his compensation as a colonel or any other post-community increases.
Colonel Croft also testified that the initial retirement payment he received of $2,351.00 was based on a lieutenant colonel’s pay. He testified that at the time of trial this amount had increased to $2,710.00. He admitted that some unspecified portion of this increase from $2,351.00 to $2,710.00 was attributable not to his promotion, but to cost of living increases.
In the final analysis this Court is faced with a record very much like that which faced the Wirstrom court, and we reach the same conclusion:
“Mr. Wirstrom has not met his burden of proof in this regard. The only evidence of record concerning earnings is the couple’s 1982 tax return. There was no evidence presented concerning Mr. Wirstrom’s current pay; what raises he may have received since 1982 and the relationship between any raises he may have received and his pre and post-community efforts; and his anticipated pay at retirement. While he testified that his personal and post-community efforts were responsible for a substantial pay increase, there is no evidence of record for us to make a determination as to which of his post-community increase in compensation, if any, was due purely to his personal effort or skill and unrelated to the prior community earnings.” Wirstrom, supra, at 218.
Just as in the instant case, Wirstrom involved a promotion to colonel. The Wir-strom court obviously did not believe that a promotion to colonel was a “meritorious achievement” per se, ñor presumptively so, or judgment would have been rendered in favor of Mr. Wirstrom. Proof is required. A promotion to colonel is the next natural step for a lieutenant colonel. A promotion that leapfrogs more than one step in rank could arguably be proof in itself of meritorious individual effort or achievement. Regular advancement is not.
This is not a manifest error case. In amending the decision of the trial court, we *79 do not challenge any of the credibility determinations made by the trial court. We accept as true all of the testimony given by Colonel Croft and his witnesses. Having done that, we must still conclude that as a matter of law Colonel Croft has failed to bear his burden of proof.
Therefore, it was error for the trial court to fail to include in its calculation of Ms. Croft’s share of Colonel Croft’s pension his compensation as a full colonel.
III. The Trial Court Did Not Abuse Its Discretion When It Did Not Use “Retirement Points” In Its Calculation
Mr. Croft argues that the fixed percentage calculated by the trial court should have been based on the ratio of retirement points earned during the community to the total number of retirement points. Instead the trial court adopted one of the approaches suggested by the court in Hare: a community fraction computation based on the ratio of the number of years of Mr. Croft’s creditable employment during the community to the length of his total creditable employment.
Employing the guidelines set forth in Sims v. Sims, supra, and Hare, supra, we cannot say that the trial court abused its discretion in adopting a formula based on years rather than retirement points.

DECREE

For the foregoing reasons the judgment of the trial court is amended to increase the percentage of Colonel Croft’s pension to which Ms. Croft is entitled from 17.4 percent to 26.95 percent. In all other respects the judgment is affirmed. Mr. Croft’s motion to remand is denied.

AFFIRMED AS AMENDED.

. See also Sims v. Sims, 358 So.2d 919, 922 (La.1978).

. Ms. Croft does not contend that Colonel Croft’s promotion to colonel represented a mere cost of living increase. However, as discussed later in this opinion, Colonel Croft failed to discharge his burden of distinguishing between what portion of his compensation increase was attributable to the promotion from the portion attributable to cost of living increases which he admitted he received.