694 So.2d 491 (1997)
Elizabeth Bradberry Johnson OVERTON
v.
Robert Joe OVERTON.
No. 97-CA-45.
Court of Appeal of Louisiana, Fifth Circuit.
April 29, 1997.
Rehearing Denied June 17, 1997.
*492 Bruce A. Miller, Metairie, for Defendant/Appellant.
Jana E. Smith, New Orleans, for Plaintiff/Appellee.
Before GRISBAUM, GOTHARD and DALEY, JJ.
GOTHARD Judge.
Defendant, Captain Robert Joe Overton, appeals a judgment of the trial court which partitions community property, and settles claims for reimbursement between himself and his former wife and plaintiff herein, Elizabeth Johnson Overton.
The parties were married on July 28, 1965 and divorced on March 7, 1973[1]. On April 30, 1980, judgment was rendered recognizing Ms. Overton's one-half interest in Captain Overton's retirement proceeds from Delta Airlines, "for the seven (7) years and four (4) months he was so employed during the community formerly existing between the plaintiff and the defendant". That judgment was not appealed and is now final.
Captain Overton retired from Delta Airlines some time in 1984 and began collecting retirement benefits, but paid nothing to Ms. Overton. On November 2, 1994, Ms. Overton filed a "Petition for issuance of a Qualified Domestic Relations Order", seeking to obtain payment of her portion of Captain Overton's retirement benefits. In a supplemental and amended petition filed on August 4, 1995, she made a claim for legal interest on the amount due and owing from the due date of each payment. Subsequently, on January 24, 1996, Captain Overton filed a "Petition for Partition of Community Property".
On May 6, 1996, Ms. Overton filed an exception of res judicata asserting that the issue of her interest in the Delta pension was established by the April 30, 1980 judgment which is now final and definitive. The trial court did not set the exception for hearing, but instead, took the matter under advisement. Subsequently, without ruling on the exception, the trial court heard the merits and rendered judgment with reasons partitioning the community assets and ruling that Ms. Overton is entitled to one-half of Captain Overton's pension for the period of time the parties were married to be calculated using the Sims formula, with interest on each payment as it became due. The trial court further gave Captain Overton credit for federal taxes paid, at Ms. Overton's tax rate, on the pension funds withdrawn by Captain Overton, but not collected by Ms. Overton.
Captain Overton appeals that judgment citing six errors. In the first assignment of error, he asserts the trial court erred in failing to adjust the amount due Ms. Overton from the Delta pension in accordance with Hare v. Hodgins, 586 So.2d 118 (La.1991). Hare provides for modification of the Sims formula in the employee spouse's favor when *493 that spouse proves that his or her income, and correspondingly, the amount of the eventual retirement benefit, increased substantially after the divorce due to personal and extraordinary effort or achievement, such as when the employee receives pay raises based on individual merit. Withers v. Withers, 27,348 (La.App. 2 Cir. 9/27/95), 661 So.2d 529. In Hare, the Louisiana Supreme Court ruled that where the income received at retirement contains a substantial increment ascribable to the working spouse's personal effort or achievement after termination of the community, that spouse may be entitled to an adjustment in the community fraction giving credit to his or her separate property for that increment.
Thus, for the courts the process may be viewed as a winnowing of increments of post-community increases in the employee spouse's earnings for the purpose of determining whether the increases are due purely to personal merit. First, the increment must represent a fairly substantial increase in the employee spouse's post-community earnings. Second, the increment must not be due to a non-personal factor, such as cost-of-living raises, etc. Third, the increment must be attributable to the employee spouse's meritorious individual efforts or achievements. Moreover, since the employee spouse has the burden of production of the evidence and persuasion, cases of doubt should be resolved in favor of the community and against the employee spouse's separate estate or subsequent marital community.
Hare v. Hodgins, supra, 586 So.2d at 128.
In the instant case, Captain Overton testified that he was employed as a pilot for Delta Airlines for about thirty years. During those years he flew many different kinds of aircraft. With each "upgrade" he was required to successfully complete ground training and flight tests. Employees of Delta are selected and assigned to various aircraft through a "bid" process in which openings are posted on a bulletin board in the employees lounge. Anyone interested in the position puts in a "bid". The pilot with the most seniority of those who make bids gets the opportunity to go to ground school and flight training. It is clear from the testimony contained in the record that seniority guaranties admission to a particular fight school, but placement in the position applied for depends on successful completion of the training.
Captain Overton reached an impasse in his career when Delta phased out the DC-8 which Captain Overton flew. He was faced with the choice of returning to the 727 which he described as "an antiquated plane" or advancing to the L-1011. He chose to bid for the position on the L-1011. Captain Overton asserts that the flight training for the L-1011 is difficult because the aircraft is very complex; and his assessment is corroborated by other testimony. He maintains that his rigorous pursuit, and ultimate upgrade from captain of a DC-8 to the larger and more technologically sophisticated L-1011 justifies an adjustment to the community fraction of the retirement benefits.
From the trial court's ruling it is apparent that it did not find Captain Overton's argument for adjustment under Hare convincing. On review we find no error in that ruling. We believe the move to the L-1011 was a natural progression in Captain Overton's career as an aviator. The nature of aviation requires that a pilot receive additional training before advancing to more technologically complex aircraft. Captain Overton admits he has flown many different planes in his thirty years with Delta and training was required for each upgrade. He also admitted that his failure to upgrade his skills would have led to a demotion and cut in pay upon return to a less technologically advanced aircraft.
We agree that Hare is controlling. Any doubt should be resolved in favor of the community and against the employee spouse's separate estate. Hare v. Hodgins, supra; McCown v. McCown, 93-899 (La. App. 3 Cir. 3/2/94), 634 So.2d 1249. We do not find this to be the kind of personal achievement which would necessitate an adjustment to the community fraction under Hare v. Hodgins, supra. See also; Croft v. Croft, 93-2145 (La.App. 4 Cir. 3/15/94), 634 So.2d 76; writ den. 94-0956 (La.6/3/94), 637 So.2d 506.
*494 Captain Overton also argues the trial court erred in awarding legal interest on pension arrearage extending prior to the date of judicial demand. In the judgment from which Captain Overton appeals, the trial court awarded interest on each pension payment as it became due, but not on the equalizing payment due Ms. Overton on reimbursements originating from the division of other property in the judgment.
Captain Overton argues initially that interest may not be awarded because it was not prayed for by Ms. Overton. We find no merit in this argument. It is noted that interest was sought in a supplemental and amending petition.
Captain Overton characterizes the pension payments as community assets in the possession and control of one of the spouses before partition, and asserts that he had no legal obligation to invest the money in an interest bearing account. Ms. Overton maintains the payments constitute post-partition funds wrongfully withheld from her by Captain Overton. Although we find neither characterization to be totally accurate, we find Ms. Overton's arguments more persuasive.
In support of his claim that interest should run for date of partition, Captain Overton cites Fastabend v. Fastabend, 606 So.2d 794 (La.App. 3 Cir.1992); writ den. 609 So.2d 231 (La.1992). In Fastabend, the wife was given interest on community assets in control of her ex-husband. In reversing the trial court's judgment of interest, the Third Circuit, citing Barbin v. Barbin, 546 So.2d 609, 611 (La.App. 3 Cir.1989), stated:
We know of no theory of law that requires a former partner in community to invest community funds prior to partition so that they will earn interest in the interim between dissolution of the community and the date of partition.
Fastabend, supra, 606 So.2d at 798.
Ms. Overton argues the ruling in that case should be restricted to equalizing payments and should not be applied to the instant case in which Captain Overton knew of Ms. Overton's right to a portion of the proceeds of the pension, but failed to pay her accordingly. She further argues that the pension was not a community asset awaiting partition. Instead, she maintains the pension was partitioned by the 1980 judgment and therefore, payments, as well as interest on those payments to her, were due when the pension checks were received by Captain Overton.
The 1980 judgment established a portion of the pension as community property. It did not partition those funds which were, at the time of judgment, unvalued and unearned. However, the award of interest is unrelated to any legal obligation Captain Overton may have had to invest community funds in his possession pending partition. It was awarded in accordance with LSA-C.C. art. 2000 which provides in pertinent part that; "when the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due".
There is no clear cut rule on when legal interest should begin to run in such cases. In Poirier v. Poirier, 95-394 (La.App. 3 Cir. 11/2/95), 664 So.2d 532, at 534-535, the Third Circuit reasoned that generally interest should be awarded only from the date of partition of the former community, reasoning that the valuation at the time of the partition takes into account the appreciation in value of the property between the time of judicial demand and the time of trial when the valuation is actually made. However, in Poirier, because the property partitioned in 1994 had been valued as of the original partition in 1989, the value did not reflect the appreciation. Under those circumstances, the court granted interest on the equalizing payment from date of judicial demand.
There is some legal basis for the trial court's award of interest earlier than date of demand. This court, in Fouchi v. Fouchi, 487 So.2d 496 (La.App. 5 Cir.1986); writ den. 493 So.2d 636 (La.1986), allowed interest from date of dissolution of the community. See also: Auger v. Auger, 434 So.2d 492 (La.App. 2 Cir.1983); Hodson v. Hodson, 292 So.2d 831 (La.App. 2 Cir.1974); application den. 295 So.2d 177 (La.1974). However, as observed in Barbin v. Barbin, supra, the above cited cases generally involved situations in which the spouse owing the equalizing payment has been guilty of fraud in *495 attempting to conceal or misrepresent facts concerning community property.
We are aware, of course, that the above cited cases address the appropriateness of interest awards on equalizing payments which would not be established until the trial on the partition. While these cases are illustrative, they are not controlling. We use them only for analysis.
Because there is no clear directive in the law, given the circumstances in this case, we are not inclined to reverse the trial court. Although the 1980 judgment merely recognized the pension as being partially a community asset and did not actually partition the property, the justification for excluding pre-judgment interest in partition cases does not apply to this case. The pension payments were not valued at the time of partition. They were valued when they were received by Captain Overton. Thus, the policy of disallowing pre-judgment interest because the asset valued at the time of partition takes appreciation into account, is inapplicable. Further, Ms. Overton had a judicially declared ownership interest in the Delta pension by virtue of the 1980 judgment. She was entitled to a portion of each pension payment Captain Overton received when he received it and we find no error in the trial court's ruling that interest was due from the date each payment was received. LSA-C.C. art. 2000.
In his next assignment of error, Captain Overton asserts that the trial court erred in awarding him credit for taxes paid on the Delta pension based on Ms. Overton's tax rate. He maintains the applicable tax rate was the actual tax rate paid, i.e. Captain Overton's. In support of his position, Captain Overton cites, Goodwyne v. Goodwyne, 94-0079 (La.App. 4 Cir. 6/30/94), 639 So.2d 1210; writ den. 94-2035 (La.11/4/94), 645 So.2d 211. We do not find Goodwyne controlling since, although a credit was given by the trial court for actual taxes paid, that ruling was not contested and discussed by the Court of Appeal. Nonetheless, we find that in the interest of fairness, Captain Overton should be given credit for the actual taxes paid on the money received, and we amend the judgment to reflect that credit.
In his fourth assignment of error, Captain Overton maintains that the trial court erred when it incorrectly awarded Ms. Overton $5,800.00 reimbursement to Billups P. Johnson in payment of a community debt paid out of separate funds. He asserts the correct amount should be $1,500.00 as evidenced by exhibit number 19, a check written to Mr. Billups P. Johnson out of Ms. Overton's checking account after termination of the community.
After a review of the record and the exhibits, we find the trial court intended to acknowledge Ms. Overton's right for reimbursement of $5,800.00 paid by Ms. Overton as the final payment on real property in Colorado previously partitioned. It is clear from the record that this was a community debt paid by Ms. Overton out of her separate funds which was not contested by Captain Overton at trial. However, the next exhibit filed in the numerous exhibit file is a check for $1,500.00 written to Billups P. Johnson for investigative services, a claim for reimbursement to which Captain Overton objects.
Captain Overton doesn't seriously argue that he contested the $5,800.00 reimbursement, he suggests that it is possible that the trial court simply decided to refuse his ex-wife's claim for reimbursement on the property payment and grant her claim for reimbursement of the investigative fee paid to her brother. We find Captain Overton's argument unconvincing. It is obvious from the record that the trial court intended to award Ms. Overton reimbursement for payment of the community debt on the real property in Colorado, and deny her claim for reimbursement for investigative services, but inadvertently transposed the two exhibits. Therefore, we find no merit in this assignment, and we amend the judgment to change "Billups P. Johnson" to "Colorado land payment" on the $5,800.00 payment labeled as "i" in the list of community debts made with Ms. Overton's separate property in the judgment.
In his fifth assignment of error, Captain Overton argues that the trial court erred in the classification of certain stock as community property. Captain Overton maintains that 99 shares of Advance Tech Labs, *496 Inc., purchased with his separate funds about twenty years after the termination of the community pursuant to a stock option acquired during the community, should have been classified as his separate property. In the alternative, he argues that if the classification as community property is correct, he is entitled to reimbursement from the community for the stock purchase.
The record shows that the purchase of the stock came about as a result of a "spin off" of a company in which the community owned stock. Captain Overton took advantage of a stock option offered by the company, and purchased 99 shares on Advanced Technology, Inc. in 1994 at $16.98 per share. The certificate evidencing the shares was issued in the name of both parties. The trial court classified the stock as a community asset, entitling Captain Overton to a reimbursement of 1/2 the cost of the stock.
LSA-C.C. art. 2338 provides in pertinent part:
The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things.....
Here the trial court found that stock options on community held stock, acted upon by the husband after dissolution of the community, was community where the new stock certificate was issued in both names. Further, the court recognized that payment for the stock was made with Captain Overton's separate funds and allowed reimbursement for one-half of the cost of the stock. We find no error in that ruling. See; Goodwyne v. Goodwyne, supra.
In his final assignment of error, Captain Overton alleges that the trial court erred in failing to consider a promissory note due Leneta Overton. At trial it was established that Captain Overton's mother loaned the couple $12,000.00 which is evidenced by a promissory note contained in the record. The parties used the money to purchase real property in Mississippi. Because there is a sale pending on the property and the parties have agreed to divide the proceeds of the sale, they agreed to exclude the property from partition in the instant proceedings. Consequently, the trial court did not consider the $12,000.00 debt in these proceedings.
Captain Overton asserts that claims for reimbursement related to the promissory note should have been resolved by the court. He cites no law in support of this argument. Both parties have acknowledged the debt, and the parties have agreed to sell the property and divide the proceeds. Further, both parties agreed to exclude consideration of the property from this partition proceeding. Although, the $12,000.00 debt is not specifically linked to the property by establishment of a mortgage or paraph, it is clear from the record that both parties acknowledged the loan was made to purchase the property. Under these circumstances, we find no error in the trial court's decision that the claim against the community for the $12,000.00 should be excluded from these proceedings.
Ms. Overton argues that relitigation of the portion of Captain Overton's pension to which she is entitled is barred by the 1980 judgment, and the trial court erred in failing to grant the exception of res judicata filed before the trial on the merits. As previously stated, the trial court referred consideration of the exception of res judicata to the merits of the case, but did not make a specific ruling on the exception. As a general rule, where a judgment is silent with respect to any demand which was at issue in the case under the pleadings such silence constitutes a rejection of that demand. Sun Finance Co., Inc. v. Jackson, 525 So.2d 532 (La.1988); Bankers Trust of Louisiana v. Smith, 629 So.2d 525 (La.App. 5 Cir.1993); writ den. 94-0124 (La.3/11/94), 634 So.2d 393. Thus, we conclude that the exception of res judicata was denied by the trial court.
We note that Ms. Overton did not appeal from that ruling, nor did she answer the appeal filed by Captain Overton as required by LSA-C.C.P. art. 2133. Thus, we cannot consider this argument. However, we are not inclined to apply the principles of res judicata to the division and valuation of the pension at the time of partition of community assets, when the judgment used as basis for *497 the exception is a decision made prior to retirement, and concerns the legal property right of the non-employee spouse to that pension.
For the foregoing reasons, the judgment of the trial court is amended to credit Captain Overton for all taxes paid on the pension benefits received, and to change item "i" in the list of community debts paid with Ms. Overton's separate property to reflect 5,800.00 paid for "Colorado land payment". In all other respects, the judgment of the trial court is affirmed.
AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] The divorce was retroactive to November 17, 1972, the date of the filing of the divorce petition.