|, MURRAY, Judge.
Sidney J. Heck appeals from a partition judgment rendered in favor of his former wife, Frances D’Aquila Heck. For the following reasons, we affirm in part, amend in part, and render.
FACTS:
Sidney J. Heck and Frances D’Aquila Heck were married in 1956, and separated in 1986, shortly after Mr. Heck began receiving retirement benefits from a job he held for the duration of the marriage. Mr. Heck filed a petition for divorce on February 19, 1988, and was granted a judgment of divorce on March 30,1988.
Mrs. Heck filed a petition to partition on June 10, 1996. Both sides filed detailed descriptive lists, and conducted discovery. On November 6, 1997, the parties entered into a consent judgment agreeing on all issues but two. The two remaining issues were argued to the trial court in post-trial memoranda, and are the subject of this appeal. The first issue is whether Mr. Heck owes his ex-spouse interest on half of each retirement check he received from the date the community |2terminated through October 31, 1997. The second issue is whether a 50% Joint and Survivor Annuity purchased with community funds for Mrs. Heck’s benefit should be considered an asset of the community susceptible of valuation at this time.
DISCUSSION:
A. Interest on Retirement Payments
As part of the consent judgment, Mr. Heck agreed to reimburse Mrs. Heck half of each retirement check he received through October 31, 1997. The issue on appeal is whether he also owes her interest on those payments.
In its Reasons for Judgment the trial court explained that it was unfair for Mr. Heck to have had the benefit of his retirement cheeks for a number of years, with Mrs. Heck receiving nothing. For that reason, the trial court awarded interest to Mrs. Heck, at the applicable rate of legal interest, from the date Mr. Heck received each payment.
On appeal, Mr. Heck argues that this was error. He concedes that Mrs. Heck became a co-owner of an undivided one-half interest of his retirement account on the date the community terminated, February 19, 1988. However, he argues that interest should only be retroactive to the date Mrs. Heck petitioned the court to partition the community, June 10,1996.
The trial court relied primarily on two cases, Overton v. Overton, 97-45 (La.App. 5 Cir. 4/29/97), 694 So.2d 491, writ denied, 97-1876 (La.10/31/97), 703 So.2d 26, and Goodman v. Lee, 78 F.3d 1007 (5th Cir.), cert. denied, 519 U.S. 861, 117 S.Ct. 166, 136 L.Ed.2d 108 (1996), in which pre-judgment interest was awarded retroactively to the date each payment was received.
In Overton, supra, a judgment was rendered seven years after the parties divorced, recognizing Ms. Overton’s one-half interest in Captain Overton’s retirement proceeds. At that time, Captain Overton had not yet retired and therefore his retirement account was unmatured. After Captain Overton retired sometime in 1994, he began receiving checks, but paid nothing to his ex-wife. In November of 1994, Ms. Overton filed a petition for issuance of a Qualified Domestic Relations Order, and in a supplemental petition requested legal interest from the due date of each payment. Captain Overton filed a petition to partition the community in January of 1996.
*485 Captain Overton claimed that his ex-wife should only be allowed interest retroactive to the date of judicial demand. He characterized his retirement payments as assets in the possession and control of one of the spouses before partition, and claimed that he had no legal obligation to invest money in an interest-bearing account. Mrs. Overton characterized the funds as post-partition funds wrongfully withheld from her. The court found neither characterization to be accurate. Instead, the court found that the earlier judgment established a portion of the pension as community funds, but did not partition the funds because they were unva-lued and unearned at the time. The court explained that interest was not awarded because of any legal obligation of Captain Overton to invest community funds in his possession pending partition. Rather interest was awarded in Laccordance with La. Civ.Code art.2000, which provides in part: “When the object of a performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due....”
The court further explained that there were no clear cut rules on when legal interest should begin to run. For that reason, the court stated that it was “not inclined to reverse the trial court.” Because Ms. Overton had a judicially-declared ownership interest in Captain Overton’s retirement account, she was entitled to a portion of each payment received when he received it. The court found no error in the trial court’s ruling that interest was also due from the date each payment was received.
In Goodman, supra, a musician brought suit against her former partner’s heirs seeking, among other things, an accounting for royalties received from the use and exploitation of a song she allegedly co-authored. The Fifth Circuit held that, under Louisiana law, Ms. Goodman was entitled to recover pre-judgment interest beginning when the defendants began receiving royalties.[1] The heirs argued that Ms. Goodman was only due interest from the date of judicial demand, but the federal court, in its interpretation of Louisiana law, relied on La. Civ.Code art.2000, and awarded interest from the date each royalty payment was received.
We note that the Goodman case did not involve former spouses, and therefore regular co-ownership laws applied. See La. Civ. Code arts. 797-818. As such, its holding is not germane to the proceedings below, despite Mrs. Heck’s ^argument that because she acquired her co-ownership rights in 1988 when the community terminated, the old co-ownership articles are applicable.[2] She references the “application” section of new La. Civ.Code art. 2369.1, which states that “[njothing in this Act shall be construed to change the characterization of assets acquired or fruits and products accrued prior to January 1, 1996.” We disagree with this analysis. Characterization of assets refers to whether assets are separate or community; Mr. Heck does not dispute that the monies he received from his retirement account were community funds. He does argue, however, that the “new” co-ownership articles relative to matrimonial regimes are applicable.
1995 La. Acts No. 433, § 3, provides:
This act applies to former community property that is co-owned by spouses or former spouses on or after January 1, 1996, regardless of when the community regime of the spouses or former spouses terminated. Nothing in this Act shall be construed to change the characterization of assets or fruits and products accrued prior to January 1, 1996, nor to invalidate any act or transaction made prior to January 1, 1996, by a spouse or former spouse according to the law in force at the time of the act or transaction. Nor shall a spouse or former spouse incur an obligation imposed by this Act for any action taken before *486 January 1, 1996, with respect to former community property, unless the spouse or former spouse was obligated according to the law at the time the action was taken.
It is clear from our reading of the Act that the new co-ownership articles apply to this case.
The trial court held that Mr. Heck owed Mrs. Heck interest on half of each retirement payment in accordance with La. Civ.Code art. 2000. First, we note that La. Civ.Code art. 2000 is found in Title IV of the Code entitled “Conventional | {¡Obligations or Contracts.” That article provides that “[w]hen the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due,.... ” We can find no provision under the pertinent co-ownership articles to indicate that Mr. Heck had any duty to perform, that is, automatically give Mrs. Heck half of each retirement check when received. When the final judgment of divorce was rendered, the community automatically terminated retroactive to the date the petition for divorce was filed. At that time, Mrs. Heck became a co-owner in indivi-sión of all of the community of acquets and gains of the marriage, one item of which was Mr. Heck’s retirement account. The fact that the account was already in pay status is of no moment.
The only duty delineated under the new co-ownership articles is found in La. Civ. Code art. 2369.3. That article provides that “[a] spouse has a duty to preserve and to manage prudently former community property under his control, ..., in a manner consistent with the mode of use of that property immediately prior to termination of the community property regime. He is answerable for any damage caused by his fault, default, or neglect.” The record is void of any allegations of wrongdoing on Mr. Heck’s part that would rise to the level of fault, default, or neglect.
Louisiana Civil Code art. 2369.8 provides that a spouse may demand partition of a former community at any time. If the former spouses cannot agree on a partition, either spouse can demand a judicial partition. Although Mrs. Heck states in her brief that the parties attempted to negotiate a settlement for the nine 17years prior to her filing a petition to partition, the record before us contains no evidence of these negotiations. Therefore, we find that Mrs. Heck is entitled only to interest on the reimbursement due her by Mr. Heck for his retirement payments from the date of judicial demand. This finding is in accord with La. Civ.Code arts.1989, 1990, and 1991, that provide if an obligee desires to collect damages for delay in performance, he must first put the obligor in default by a written request for performance, or by an oral request made before two witnesses, or by filing suit for performance.
B. Valuation of 50% Joint and Survivor Annuity
Prior to Mr. Heck’s retirement, he and Mrs. Heck agreed to purchase, through his retirement plan, a 50% Joint and Survivor annuity, which would provide income for Mrs. Heck should Mr. Heck predecease her. Without this annuity, all retirement account payments would cease upon Mr. Heck’s death. A portion of Mr. Heck’s monthly check, i.e., community funds, was withheld and applied to the purchase of the annuity. The issue on appeal is whether this annuity is a community asset susceptible of a present-day valuation.
Mr. Heck argues that the annuity is susceptible of valuation, and therefore, a value should be determined, and applied as an equalizing factor in settling the community. Mrs. Heck argues that because the annuity has not come to fruition and is not yet payable, its value cannot be determined at this time.
The trial court agreed with Mrs. Heck and stated in its Reasons for Judgment that the annuity might be an asset, but its value was too speculative. The trial | «court thus retained jurisdiction on the issue of the value of the annuity. The court explained that if the annuity ever came to fruition, Mr. Heck’s estate could seek credit for the payments received by Mrs. Heck.
First we address the issue of whether the annuity is a community asset. The jurisprudence has consistently held that *487 a spouse’s right to receive an annuity, lump-sum benefit, or other benefit payable by a retirement plan is, to the extent attributable to the spouse’s employment during the community, an asset of the community. Bailey v. Bailey, 97-1178, p. 7 (La.2/6/98), 708 So.2d 354, 357; Sims v. Sims, 358 So.2d 919, 922 (La. 1978). Further, the First Circuit has recognized that any survivor benefits payable to an ex-spouse by the other ex-spouse’s retirement plan are an inextricable part of the retirement plan, and are thus also assets of the community. Ordoyne v. Ordoyne, 94-1766, p. 4 (La.App. 1 Cir. 4/7/95), 653 So.2d 839, 841, writ denied, 95-1170 (La. 6/23/95), 656 So.2d 1018. We thus hold that the 50% Joint and Survivor Annuity is an asset of the former community.
The second part of the issue is whether the annuity can be valued at this time. In two seminal cases, T.L. James & Co., Inc., v. Montgomery, 332 So.2d 834 (La. 1975), and Sims, supra, the Supreme Court examined retirement plans not yet payable to the recipients. In T.L. James, the Court recognized that deferred compensation earned during the existence of the community accrues to the benefit of both spouses. In Sims, the Court set forth the following principle:
19[A]t the dissolution of the community, the non-employed spouse is entitled to a judgment recognizing that spouse’s interest in proceeds from a retirement annuity ... when they become payable with the spouse’s interest to be recognized as one-half of any payments to be made, insofar as they are attributable to the other spouse’s contributions or employment during the existence of the community.
Applying the principle, the court recognized the wife’s proportionate interest in her ex-husband’s retirement annuities, if and when they became payable, without attempting to fix a present monetary value for the interest, because it had none. Sims, supra at 922.
The facts of this case are slightly different, that is, in T.L. James and its progeny, the asset at issue was a primary retirement plan not yet in pay status. In this case Mr. Heck’s retirement plan is in pay status already, but the Joint and Survivor Annuity is not. However, we see no difference between a primary deferred compensation plan and an annuity purchased to provide for a surviving spouse. Therefore, we find no error in the trial court not valuing the annuity at this time, and retaining jurisdiction to determine the value of the annuity, if and when it becomes payable.
CONCLUSION:
For the foregoing reasons, we amend the judgment of the trial court to award Mrs. Heck interest on her half of Mr. Heck’s retirement payments retroactive to the date of judicial demand, June 10, 1996. Further, we amend the judgment of the trial court to recognize the 50% Joint and Survivor Annuity as an asset of the | ipformer community of acquets and gains. The judgment is affirmed in all other respects.
AFFIRMED IN PART, AMENDED IN PART, AND RENDERED.

. Ms. Goodman was not allowed to recover for the years the decedent was receiving the royalties directly because she had not sued the decedent’s succession representative as required by law.

. 1995 La. Acts No. 433, effective January 1, 1996, amended La Civ.Code art. 2369.1, and added seven new articles, La. Civ.Code arts. 2369.2 through 2369.8. Prior to the amendment, when the community property regime terminated, the law of ordinary co-ownership applied "unless there was a contrary provision of law or juridical act.’’ La. Civ.Code art. 2369.1, prior to amendment.