966 So.2d 611 (2007)
Jay CUCCIA
v.
BOARD OF ZONING ADJUSTMENTS OF/AND the PARISH OF JEFFERSON.
No. 07-CA-152.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 2007.
*612 Richard D. Tiemann, Jr., Attorney at Law, Gretna, LA, and Timothy J. Falcon, Attorney at Law, Marrero, LA, for Plaintiff/Appellant.
Thomas G. Wilkinson, Philip A. Gattuso, Attorneys at Law, Gretna, LA, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Plaintiff, Jay Cuccia, appeals a judgment of the trial court that upheld a decision by the Jefferson Parish Board of Zoning Adjustments (Board) to deny Mr. Cuccia a variance from the maximum height allowance for a new accessory building partially constructed on his property. The question here is whether, in the factual context of this case, Jay Cuccia acquired a property right to the structure as originally permitted and constructed before the permit was rescinded. We find that he did. Accordingly, we reverse.
Mr. Cuccia filed suit against the Board alleging in his petition that the Jefferson Parish Department of Inspections and Code Enforcement (DICE) issued a building permit upon review of the plans and specifications submitted for the construction of a new two-story garage and patio, allowing a portion of the structure to exceed the maximum height of thirteen feet provided by the Jefferson Varish Building Code. Mr. Cuccia further alleged that the structure was substantially complete, and nearing the final phase of construction, when DICE suspended the permit and required him to submit new plans or file for a variance of the building code.
Mr. Cuccia maintains he was advised that suspension of the permit was not a stop work order, and that he did not receive a stop work order until nearly two months after the building permit was suspended. Mr. Cuccia's appeal to the Board for a variance was denied, and he filed this action in the trial court asserting that the Board, "acted contrary to law, abused its discretion, and acted in an arbitrary and capricious manner in denying the variances concerning the maximum height requirement."
The Board answered the petition with a general denial and filed an exception of no cause of action. The trial court rendered judgment affirming the decision of the Board and dismissing the plaintiff's petition.[1] It is this judgment that forms the basis of this appeal.
FACTS
During the process of restoring the home he had purchased from his grandparents' succession, Jay Cuccia sought a permit to construct a two story accessory *613 building which included a garage and patio. DICE reviewed Mr. Cuccia's plans three times, requiring necessary changes. Mr. Cuccia made the necessary changes each time and resubmitted the plans to assure compliance with the building Code. When the building permit was issued Mr. Cuccia began construction. He poured the slab, and roughed in the plumbing. At the inspection which occurred at that point DICE did not notify Mr. Cuccia that the permit was issued in error. Thereafter Mr. Cuccia framed the building according to the original permit. Apparently after the building was framed, various neighbors made complaints that the building height did not comply with the Jefferson Parish building code. At issue was a part of the second story nearest the street which was measures 11 feet by 5 feet in dimension. The balance of the second story is in code.
On March 22, 2005, thirty-seven days after the building permit was issued and after the building had been framed, DICE informed Mr. Cuccia by letter that the building permit was suspended because had been issued in error as the structure exceeded the maximum height allowed of thirteen feet. The letter further instructed Mr. Cuccia to either file for a variance of the code requirement, or submit drawings that comply with the code. Mr. Cuccia became aware of this letter about two weeks later when he returned from vacation. At that time he telephoned the building permit office and was told the letter was not a stop work order and that he could apply for a variance. Mr. Piglia, a representative of DICE also told Mr. Cuccia that he could close up the building in order to render it water tight. On May 16, 2005, a stop work order was posted on Mr. Cuccia's door. On the next day Mr. Cuccia filed a request for a variance with the Board.
The board conducted several public hearings on this matter. John Piglia and Paul Pham of DICE explained to the board that the permit had been issued, that it was only a few weeks later, after the slab had been poured and the building framed, that DICE realized that a part of the second floor violated the maximum height requirement and suspended the building permit. They testified that the balance of the second floor was in code. John Piglia also testified that because construction had begun before DICE realized its error, DICE gave Mr. Cuccia permission to make the building "water tight."
At the public hearings both neighbors and board members testified and argued in opposition of the variance. A Beverly Knoll Civic Association petition opposing the project was admitted into evidence. Witnesses testified that Mr. Cuccia continued construction after the stop work order was issued. They testified that they complained to DICE in response to no avail; that after building inspectors came out in response to their complaints the work continued. Board members and neighbors testified that after the stop work order was posted they confronted the workers themselves about working in violation of the stop work order without response. DICE, while admitting its error, argued that Mr. Cuccia's request for variance should be denied as untimely and, in the alternative, that the Board was correct in it decision to deny the variance.
In brief to this Court, Mr. Cuccia argues that he should have been allowed to rely on the building permit issued by DICE. He maintains that after he submitted his plans to DICE, he made every change DICE demanded before receiving his building permit. Further, he asserts that he began construction in good faith, relying on the fact that DICE had reviewed the plans on more than one occasion, and *614 had ultimately approved the changes and issued a building permit. At oral argument he argued that he was so far along in the construction before DICE rescinded the building permit so as to have acquired a property interest in the building as originally permitted. Plaintiff also argues the Board was arbitrary and capricious in its decision to deny his variance given the facts.
DICE argues that Mr. Cuccia's request for a variance was untimely and, in the alternative, the Board was correct in its decision to deny the variance.
In order to decide this matter we must first decide whether Mr. Cuccia had a right to rely on the building permit issued in error. And, if so at what point did that reliance confer a property right in the structure build in good faith based on reliance on the building permit.
The plaintiff relies on Jefferson Parish v. Davis,[2] in support of his argument that he should have been able to rely on the building permit. Mr. Davis sought and was granted a variance from the maximum height allowed in the building code before the building permit was issued and construction began. The variance allowed the building to be two feet higher than the maximum code height. During construction Mr. Davis sought an extension of the variance to raise the building to a height of nineteen or twenty feet, which was denied.
We are mindful that our jurisprudence holds that the mere fact that a building permit was issued in error and contrary to the laws of the city does not vest an irrevocable right to proceed under that permit if there is subsequent action canceling the permission previously granted. However, fairness and our jurisprudence confirms that when a homeowner relies in good faith and to his detriment on a building permit issued by DICE, and incurs expense as a result, he has a vested right.
In Jefferson Parish v. Davis, this Court stated:
It has been generally held that a municipal building permit or license may not arbitrarily be revoked by municipal authorities, particularly where, on the faith of it, the owner has incurred material expense. Such a permit has been declared to be more than a mere license revocable at the will of licensor. When, in reliance thereon, work upon the building is actually commenced and liabilities are incurred for work and material, the owner acquires a vested property right to the protection of which he is entitled. Citing; Dunn v. Jefferson Parish, 256 So.2d 664, 667 (La.App. 4th Cir.1972), writ denied, 256 So.2d 382.

Id. 716 So.2d 428, 433.
In the matter before us, Mr. Cuccia presented his plans and specifications to DICE three times, on each occasion Mr. Cuccia made the changes demanded by DICE to make certain the plans were in conformance with the building code. He did not begin construction until the building permit was issued. He roughed in the plumbing and poured the slab. At that inspection, DICE gave no indication that the building permit was issued in error. It was not until the structure was framed that DICE suspended the permit, and not until two months later that a stop work order was posted by the Parish. During this time, the Parish, through its agent, granted plaintiff the right to make the structure water-tight, which he did after *615 the stop work order was issued. Under these facts we believe Mr. Cuccia is correct in his assertion that he acquired a vested property right to the protection of which he is entitled in accordance with the above cited jurisprudence.
There is a prima facie presumption of validity which attaches to zoning board action. To overcome that presumption, a plaintiff must show the zoning board acted arbitrarily.[3] The opponent must show that the board's action bears no relation to health, safety or the public's general welfare.[4] The burden is on the appellant to affirmatively show the board abused its discretion or its decision was in excess of its jurisdiction or otherwise erroneous as a matter of law.[5] A reviewing court cannot substitute its own judgment or interfere absent a showing by the appellant or relator that the Board was arbitrary and capricious or abused its discretion.[6]
Our review of the decision of the Board shows that it did not consider Mr. Cuccia's argument that he should have been allowed to rely on the issuance of the building permit through which he acquired a vested property right. The decision of the Board on review in the trial court is contained in the record and shows that the board members:
......... unanimously agreed, if they were to allow an accessory building to exceed the maximum 13' allowance in height by 11-1/2', the variance would certainly set an extremely undesirable legal precedent in which the adjoining property values would be adversely affected; and, the variance would not meet the `standards' listed in the Jefferson Parish Comprehensive Zoning Ordinance ....................... the variance would have a negative impact on the essential character of the locality; and, it would not tend to preserve and advance the prosperity and general welfare of the neighborhood nor the community.
The Board also referenced the considerable opposition to the project from neighbors. The record of the Board's proceedings bears out the opposition, as it contains numerous letters in opposition as well as signed petitions.
While we recognize the presumption of validity afforded the Board in its decision regarding the issuance of variances, we find that under the facts of this case, the plaintiff met his burden of proof that the Board acted arbitrarily.
We must analyze this case in the context in which it existed in March, 2005 when DICE told Mr. Cuccia it had made an error in its original permit and that he could make the building "water tight" since it was DICE's mistake. By that time the land had been prepared, a slab had been poured, plumbing had been roughed in and the building had been framed up. By then, in order for Mr. Cuccia to construct the building as originally designed and without a variance, Mr. Cuccia would have had to tear down the frame, rip out the plumbing and jackhammer the slab. Alternatively, Mr. Cuccia could rip out the portion of the second floor frame which was in conflict with the *616 code. Any alterations would be costly and unnecessary had DICE correctly reviewed the application before construction began.
We recognize that Mr. Cuccia cannot benefit from the argument that the building is "substantially complete" if the work performed to make the building "substantially complete" was performed in violation of the stop work order. On the other hand, Mr. Cuccia was given permission to render the structure water tight because he had begun significant construction on the building in good faith and consistently with the building permit which DICE issued. He cannot be penalized for doing what DICE permitted and what was necessary to minimize the damages occasioned by DICE's error. Since we are looking at the structure as it existed in March, 2005 when Mr. Cuccia first received notice of the error and before he made the structure water tight, this is of no consequence.
At what point, then does Mr. Cuccia gain a property right in the structure which was originally permitted? While we do not set a bright line standard that this occurs at a particular point in time, certainly, when the home owner acts in good faith reliance upon the building permit which was issued after multiple occasions of interaction with the permitting authority, and that homeowner has prepared the lot, poured the slab, roughed in the plumbing, undergone a subsequent inspection and framed the structure, that homeowner has gained that property right.
Since Mr. Cuccia had gained his property right in the structure which had been constructed before the first written notice was sent in March, 2005, the issue of the timeliness of the variance is moot.
For reasons set forth in this opinion, we reverse the decision of the Board of Zoning Adjustments and the judgment of the trial court affirming that decision.
REVERSED.
NOTES
[1] There is no indication in the judgment or elsewhere in the record that the trial judge ruled on the exception of no cause of action before making its determination on the merits of the case. However, neither party suggests that the motion is still outstanding. As a general rule, where a judgment is silent with respect to any demand which was at issue in the case under the pleadings such silence constitutes a rejection of that demand. Overton v. Overton 97-45 (La.App. 5 Cir. 4/29/97), 694 So.2d 491; writ denied, 97-1876 (La.10/31/97), 703 So.2d 26.
[2] 97-1200 (La.App. 5 Cir. 6/30/98), 716 So.2d 428, writ denied, 98-2634 (La.12/11/98), 730 So.2d 460
[3] Parish of Jefferson v. Davis, 97-1200 (La. App. 5 Cir. 6/30/98), 716 So.2d 428, writ denied, 98-2634 (La.12/11/98), 730 So.2d 460.
[4] Merrihue v. St. Charles Parish, 496 So.2d 1232 (La.App. 5th Cir.1986), writ denied, 497 So.2d 1019 (La.1986).
[5] Prescott v. Parish of Jefferson, 96-1058 (La. App. 5 Cir. 4/9/97), 694 So.2d 468, 470
[6] Parish of Jefferson v. Davis, supra.