BROWN, Chief Judge.
11 Cynthia Lilley Tucker Edinger appeals from the judgment of the trial court holding that Larry Neal Tucker is entitled to receive 41% of her monthly payments from the Teacher’s Retirement System of Louisiana. For the following reasons we affirm in part, reverse in part, and render.

Facts and Procedural Background

Cynthia Lilley Tucker Edinger and Larry Neal Tucker were married on July 28, 1984. In 1987, Mrs. Edinger terminated her employment as a teacher in the Louisiana school system to stay at home with the parties’ children. At that time she withdrew her retirement contributions which totaled $2,057.48. In 1988, Mrs. Edinger returned to the work force as a teacher.
On May 19, 2006, Mr. Tucker filed for divorce, which was granted on March 14, 2007. Thus, the legal regime of community of acquets and gains which existed during the marriage was terminated retroactively as of the date of filing for the divorce, May 19, 2006. On October 9, 2009, Mrs. Edinger filed a petition to judicially partition the community of ac-quets and gains.
After Mrs. Edinger returned to teaching, she resumed making contributions to the retirement system. These contribu *495 tions totaled $36,985.68 at the time of the community’s termination. Mrs. Edinger last worked in the Louisiana school system in 2007. In September 2009, Mrs. Edinger paid $12,242.43 to buy back two service credits for the years of 1984 to 1986. Thereafter, in September 2009, Mrs. Ed-inger — who was 47 years old, remarried, and living and teaching in Texas — applied for teacher ^retirement benefits in Louisiana. She needed 19.95-20 years of service credit in the retirement system in order to receive monthly retirement benefits. Her retirement application was denied. In a letter from the TRSL, she was told that “service credit for the 1990 fiscal year at Richland Parish was lowered by .36. This change negated your prior minimum eligibility status of 19.95-20.00 total years.” In December 2009, Mrs. Edinger purchased the .36 remaining credits at a cost of $10,089.68. Mrs. Edinger’s application for retirement was then approved and she began receiving monthly retirement benefits in the amount of $1,374.
An initial hearing officer conference was held on March 18, 2010. In May 2011, the hearing officer issued a final report finding, among other things, that Mr. Tucker was only eligible to receive one-half of the $36,985.68 in employee contributions that could have been withdrawn at the time of the termination of the community property regime. Both parties objected to the findings set forth in the hearing officer’s conference report.
The trial court heard the objections to the hearing officer’s report and found that, contrary to the findings of the hearing officer, Mr. Tucker was entitled to receive 41% of Mrs. Edinger’s monthly payments from the retirement system and that Mrs. Edinger was entitled to reimbursement of 41% of the $22,232.11 that she spent from her separate funds in order to buy back and purchase 2.36 service credits. Mrs. Edinger appeals from this júdgment. Mr. Tucker has answered her appeal.

Discussion

Mrs. Edinger asserts that when the community was dissolved she was not eligible to retire and receive monthly benefits. At that time, she could | shave only terminated her employment and recovered her contributions to the retirement system. She posits that without her purchase of the necessary service credits, at a very high cost and from her separate funds, there would be no monthly retirement benefits. Based upon this, Mrs. Edinger contends that Mr. Tucker was only entitled to receive one-half of the $36,985.68 in employee contributions attributable to the community. Mr. Tucker answered the appeal contending that the requirement for him to reimburse Mrs. Edinger for 41% of the cost of the 2.36 service credits was improper.
Sims v. Sims, 358 So.2d 919 (La.1978), is the seminal case in Louisiana establishing the method of valuation and division of the “community” interest in a spouse’s pension plan. The court described the nature of the interest acquired by the community in the following terms: “Until the employee is separated from the service, dies, retires, or becomes disabled, no value can be fixed upon his right to receive an annuity or upon lump-sum payments or other benefits to be paid on his account.” Id. at 923. To assign a present valuation to an unma-tured pension benefit would be speculative. “Deferring the actual valuation until distribution to the annuitant substantially increases the chance that the numerous variables which affect the ultimate pension will then be taken into account.” Id. at 924 n. 7. The judgment recognizing a non-employee spouse’s proportionate interest in a community asset merely fixes for the first time the percentage owned by each spouse in the asset which continues to be co- *496 owned. The former community asset remains under the exclusive control of one of the co-owners by virtue of her relationship with her employer. Obviously, the employee spouse has a duty to exercise her control of the co-owned asset in |4“good faith.” As stated in Sims, “At present, the community’s retirement-plan interest, as yet inchoate, is in annuities or lump-sum payments to become payable in the future, as determined by the husband’s good-faith election of options available to him or by his death, separation from service, or involuntary retirement.” Id. at 923 n. 4.
“When acquired during the existence of a marriage, the right-to-share (in a retirement plan) is a community asset which, at the dissolution of the community, must be so classified even though at the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time.” T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834, 851 (La.1976).
The purpose of the Sims formula is to calculate a non-employee spouse’s interest in the employee spouse’s employee benefit plan at the time' the community property regime is terminated. This does not mean that the non-employee spouse is limited to the monetary value of the plan at the time of the community’s dissolution, but rather the non-employee spouse is entitled to the interest attributable to the community when payments become due. The hearing officer incorrectly found that Mr. Tucker was only entitled to half of the $36,985.68 of employee contributions paid in by Mrs. Edinger during the existence of the community property regime. This recommendation is counter to the ruling in Sims and hinges on the distinction that Mrs. Edinger purchased 2.36 service credits after the community regime ended. Regardless, it is situations like this to which the \ñSims formula applies. The Sims formula is used to classify the portion of an employee spouse’s employment benefit plan that is attributable to the community, and thus community property, and the portion that is considered the separate property of the employee spouse.
Here, the stipulations of the parties show that the creditable service time attributable to the community is 16.64. The creditable service time attributable to Mrs. Edinger’s post-marriage employment is one year. Also, Mrs. Edinger purchased 2.36 credits with her separate funds after the dissolution of the community. Whether Mrs. Edinger purchased the 2.36 credits with her separate funds or worked the additional time needed to achieve that creditable service time makes no difference. That time is classified as her separate interest. Accordingly, we find that the trial court did not err in holding that Mr. Tucker was entitled to half of the 82% of creditable service attributable to the community. Further, the trial court did not err in holding that Mr. Tucker was entitled to reimbursement for his 41% of the benefits already received by Mrs. Ed-inger. The trial court amended the Community Property Master List to reflect this reimbursement.
Mrs. Edinger and Mr. Tucker both take issue with the trial court’s determination that Mr. Tucker must pay Mrs. Ed-inger 41% of the amount she used of her separate funds to purchase the 2.36 service credits. Mrs. Edinger contends that she should be reimbursed 50% of the amount, while Mr. Tucker’s answer argues that he should not have to pay any portion thereof. We agree with Mr. Tucker.
*497 As we have previously stated, the 2.36 service credits that Mrs. Edinger purchased are hers separately; only she will reap the benefits of that Rcreditable service time. For Mr. Tucker to have to use his own separate funds to reimburse Mrs. Edinger for the purchase of service credits that are classified as her separate interest is not equitable. Thus, we find that the trial court erred in ordering Mr. Tucker to reimburse Mrs. Edinger 41% of the cost to purchase the 2.36 service credits. Mr. Tucker, in fact, has paid this reimbursement in the amount of $9,156.17. Therefore, we render judgment to order Mrs. Edinger to reimburse Mr. Tucker that amount.
For the first time on appeal, Mrs. Edinger argues that regardless of whether the Sims formula was correctly applied, the trial court should have offset the amount Mr. Tucker will receive from Mrs. Edinger’s retirement in accordance with La. R.S. 9:2801.1. She argues that because she is in the teachers retirement system she does not receive any Social Security benefits while Mr. Tucker will. La. R.S. 9:2801.1 provides:
When federal law or the provisions of a statutory pension or retirement plan, state or federal, preempt or preclude community classification of property that would have been classified as community property under the principles of the Civil Code, the spouse of the person entitled to such property shall be allocated or assigned the ownership of community property equal in value to such property prior to the division of the rest of the community property. Nevertheless, if such property consists of a spouse’s right to receive social security beneñts or the benefits themselves, then the court in its discretion may allocate or assign other community property equal in value to the other spouse. (Emphasis ours).
Recognizing the trial court’s broad discretion in settling and adjudicating issues raised by proceedings involving divorce and partition of community property, we find no merit to Mrs. Edinger’s argument. See Sanders v. Sanders, 34,089 (La.App.2d Cir.11/01/00), 780 So.2d 390, writ denied, 00-3275 (La.01/26/01), 782 So.2d 1026, as well as the explicit discretion set forth in La. R.S. 9:2801.1. Offsetting determinations are[7made on case-by-case bases. In the present case, the trial court would not have abused its discretion in denying offsetting as set forth in La. R.S. 9:2801.1 since the facts of this case show that Mr. Tucker was still approximately 15 years away from being eligible for Social Security benefits and that Mrs. Edinger had already retained employment and begun accumulating pension benefits as a teacher in Texas.[1]
*498 In her reply brief, Mrs. Edinger argues that the reimbursement award for the cost of obtaining the 2.36 service credits was in fact an appropriate allocation under La. R.S. 9:2801.1. The trial court, however, did not make such an allocation or assignment under La. R.S. 9:2801.1.

Conclusion

For the reasons stated herein, the judgment of the trial court finding that Larry Neal Tucker is entitled to receive 41% of Cynthia Lilley Tucker 18E dinger’s monthly payments from the Teacher’s Retirement System of Louisiana is affirmed. That portion of the trial court’s judgment ordering Mr. Tucker to reimburse Mrs. Edinger 41% of the of the cost to purchase the 2.36 service credits is reversed. Further, we render judgment to order Cynthia Lilley Tucker Edinger to reimburse Larry Neal Tucker the sum of $9,156.17. Costs are assessed to Cynthia Lilley Tucker Edinger.

. Spaht and Moreno, 16 La. Civ. L. Treatise, Matrimonial Regimes § 3.42 (3d ed.) noted:
... the result in (Comeaux v. Comeaux, 7 So.3d 110, 2008-1330 (La.Ct.App.3d Cir. 2009)) places Louisiana law in a "minority of one" on the issue of whether a court can award an “equal value” offset award for noncommunity property social security benefits. A review of the case law of other states calls into serious doubt whether R.S. 9:2801.1 is constitutional under federal preemption. ... The court acknowledged that federal preemption prevents social security benefits from being characterized as community property. However, the court noted that R.S. 9:2801.1 gave the discretion to award an equal value of social security benefits which the other spouse earned during the marriage.
... except for Louisiana and the states which absolutely forbid an award of any type of offset for the value of a spouse’s social security benefits, there is a uniform and consistent statutory or jurisprudential rule that a spouse’s social security benefits may be a factor to be considered in marital property division, but an award equal to the estimated value of those benefits is a viola *498 tion of federal law. R.S. 9:2801.1 appears to run afoul of this line of out-of-state cases because it purports to give a trial court the discretion to "allocate or assign other community property equal in value.”
If the majority national position is correct ... the discretion granted in R.S. 9:2801.1 to give an amount "equal to” is unconstitutional, violative of the Supremacy Clause.