McDonald, J.
^Virginia Butler Barker Rangeley (Ms. Rangeley) joined the City Parish Employee Retirement System (CPERS) when she started working at the Baton Rouge City Police Department (the Department) on September 1,1978. Ms. Rangeley married Tony Barker on January 20, 1979. She continued to work for the Department until she resigned on March 11, 1985, and on April 15, 1985, CPERS refunded all the contributions made into her account.
Ms. Rangeley went back to work for the Department on October 14, 1986. She decided to buy back her prior service time, and on January 15, 1987, she signed an authorization for deductions from her paycheck for this purpose to be set aside, at the rate of $250.00 per month. The actual repurchase transaction would take place after the last payment was made.
Ms. Rangeley filed a petition for divorce on June 16, 1988, at which time she had repaid $3,750.00 of the repurchase amount. Ms. Rangeley continued to make the payments after the petition for divorce was filed, using $5,668.97 of her separate funds. Ms. Rangeley and Mr. Barker were divorced on April 2, 1990. Ms. Rangeley completed the last repurchase payment on May 15, 1990, at which time the repurchase transaction occurred.
Ms. Rangeley and Mr. Barker entered into a stipulated judgment, which was signed by the trial court on November 4, 1998. The judgment stated among other things that Mr. Barker “shall be awarded his interest in the pension of [Ms. Range-ley] from East Baton Rouge City Parish employees retirement system.”
On December 9, 2011, Mr. Barker filed a petition for injunctive relief. He alleged that Ms. Rangeley intended to retire in January 2012, and he sought an injunction to freeze his portion of her retirement benefits pending further orders of the court. On January 30, 2012, the trial court signed a stipulated judgment in | ¡¡which the parties agreed to a temporary benefit distribution to Mr. Barker, pending further orders of the court.
After a trial, in a September 18, 2012 judgment, the trial court found that all of the service time earned during the community, as well as all of the repurchased service time that had been earned during the community, was a community asset. *18 The judgment specified that Ms. Rangeley was entitled to reimbursement from Mr. Barker for one-half of her separate funds used to repurchase the prior service time, $2,834.50.
Ms. Rangeley filed a suspensive appeal from that judgment. This court issued a rule to show cause on April 1, 2013, noting that the judgment at issue appeared to be a non-appealable ruling. The parties were ordered to show cause by briefs whether the appeal “should or should not be dismissed.” The parties responded by joint memorandum, which urged that the ruling was appealable.
Thereafter, the rule to show cause was referred to the merits panel to which the appeal was assigned. Barker v. Barker, 2013 CA 0116 (LaApp. 1 Cir. 6/20/13). We note that the rule to show cause was issued based upon lack of specificity; the judgment declares that the repurchased service time earned during the community shall be divided according to the Sims[1] formula, but does not apply the formula to provide a specific sum. However, we note that the judgment was not, technically speaking, based upon a demand for money in the usual sense; rather, Mr. Barker sought a ruling on the legal issue of whether he was entitled to a portion of the retirement credits earned during the community, but repurchased after the dissolution of the community. The judgment answers that question with complete certainty. Thus, we find that the judgment is final and appealable.
In her appeal, Ms. Rangeley makes the following assignments of error:
|41. The Trial Court erred in classifying as community property things which had been liquidated during the existence of the community, and for which the community received and spent cash, even though Appellant repurchased those things with her own money, after the divorce.
2. The Trial Court erred in classifying repurchased pension service credits based on the time of initial acquisition, rather than on the time [of] repurchase, or the source of funds used to repurchase the service credits.
Mr. Barker answered the appeal asking that, pursuant to La. C.C.P. art. 2133, the judgment be modified to provide for an amount of damages as a result of his loss of interest accrued on any portion of the retirement benefit awarded to him by the trial court, including both the DROP as well as the monthly service retirement allowance awarded in the trial court judgment, retroactive to the date of distribution of the retirement benefits accumulated in Ms. Rangeley’s DROP account and the monthly service retirement allowance by CPERS. He asked that the judgment be affirmed in all other respects'and that Ms. Rangeley be assessed with costs.
The facts of this case are not in dispute. Therefore, the issue is whether the district court correctly interpreted and applied the law. Appellate review of questions of law is simply review of whether the trial court was legally correct or legally incorrect. City of Baker School Bd. v. East Baton Rouge Parish School Bd., 99-2505 (La.App. 1 Cir. 2/18/00), 754 So.2d 291, 292. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. Northwest Louisiana Production Credit Ass’n v. State, Dept. of Revenue and Taxation, 98-1995 (La.App. 1 Cir. 11/5/99), 746 So.2d 280, 282; Bridges v. Smith, 01-2166 (La.App. 1 Cir. 9/27/02), 832 So.2d 307, *19 310, writ denied, 02-2951 (La.2/14/03), 886 So.2d 121.
| .^Louisiana Civil Code article 2338 provides:
The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.
Louisiana Civil Code article 2341 provides:
The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.
In its reasons for judgment, the trial court found:
Pursuant to La. C.C. art. 2338, the right to share in a retirement plan is a community asset, co-owned by the spouses, and subject to division upon dissolution of the marriage. Louisiana State Employees’ Retirement System v. McWilliams, 2006-2191 (La.12/2/2008), 996 So.2d 1036, 1043.
Our Supreme Court, citing Frazier v. Harper, 600 So.2d 59, 62-6[3] (La.1992), summarized the basis behind community property law principles surrounding retirement benefits as follows:
“(1) an employee’s contractual pension right is not a gratuity, but a property interest owned by him; (2) to the extent that the right derives from the spouse’s employment during the existence of the marriage, it is a community asset and subject to division upon dissolution of the marriage; (3) the right to share in a retirement plan is a community asset which, at the dissolution of the community, must be so classified-even though at the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time.” McWilliams, 996 So.2d at 1043.
UThe repurchased retirement is a benefit granted to compensate Virginia [Rangeley] for the exercise of her labor, skill or industry. To the extent that the effort was made during the community, the benefit should be community. Had Virginia not worked during that period of time, there would be nothing to buy back. It is the community labor that created the right. The benefit is attributable to labor during the marriage. It should be unimportant that her buy *20 back was voluntary or that she had to complete the payments in order to get the benefit. Furthermore, the source of the funds with which Virginia purchased the community assert should not change the character of the asset.
The Court finds that all repurchased service time that was earned during the existence of the community is an asset of the community and shall be divided according to the Sims formula. Virginia [Rangeley] is entitled to reimbursement from Tony Barker in the amount of one-half of the separate funds that she used to repurchase the service time.
In support of her position that the service credits she purchased were separate property, Ms. Rangeley cites Lodrigue v. Lodrigue, 01-1630 (La.App. 3 Cir. 5/8/02), 817 So.2d 466, writ denied, 02-1604 (La.10/4/02), 826 So.2d 1124. In that case, Mr. Lodrigue served in the military prior to his marriage. After he married, Mr. Lodrigue purchased service credit in his public pension program for his two years of military time. The trial court found that the two years of military service credit were not part of the community property. On appeal, the third circuit found that the two years of military service credit were community property because they were acquired during the community and were purchased with community funds. Thus, Ms. Rangeley maintains, the classification of the service credits purchased is determined by both the source of the funds and the timing of the purchase.
Ms. Rangeley also relies upon Tarver v. Tarver, 05-367 (La.App. 3 Cir. 11/2/05), 916 So.2d 1222. In that case, Mr. Tarver began working for the Concordia Parish Police Jury in 1973. He began contributing to the Parochial Employees Retirement System in April 1977, and got married three years and five months later. Three years after the marriage, in September 1983, he began working for the Department of Wildlife and Fisheries, withdrew his accrued 17contributions from the Parochial Employees Retirement System, and spent the refunded money on community purchases. Thereafter in 1991, he repurchased the time in the Parochial Employees Retirement System, and also purchased additional time for the three years and seven months that he worked with the Concordia Parish Police Jury before he joined the Parochial Employees Retirement System, for a total of 10.11 years, using community funds. The trial court concluded that the repurchased time was not community property. On appeal, following its ruling in Lodrigue, the third circuit reversed the trial court, noting that all of Mr. Tarver’s retirement credits were either earned or repurchased during the community with community funds, and finding that the repurchased time was all community property. Ms. Rangeley maintains that the Tarver court found that the source of the funds dictated the classification of the service credits.
Ms. Rangeley states that the language of Sims requires the trial court to credit the community only with the years of service credit that were in existence during the community, and that she did not have a property interest in the years of service credits being repurchased prior to the community termination date, June 16, 1988, as no service credits were put back into the system until the last payment was made. Thus, she maintains that her property interest in the service credits was attained on May 15, 1990, when she made the last payment.
Mr. Barker maintains that the trial court correctly determined that he had a property interest right in that portion of Ms. Rangele/s retirement benefit account earned and accrued during the existence of the matrimonial regime, irrespective of the *21 time and manner in which it was repurchased. Mr. Barker asserts that the jurisprudence provides that the classification and characterization of the retirement benefit is to be determined as of the time the right was derived and/or acquired, irrespective of the marketable or redeemable cash value, and even though the ^contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time.
Mr. Barker relies in part upon La. State Employees’ Retirement System (LASERS) v. McWilliams, 06-2191 (La.12/2/2008), 996 So.2d 1036, 1043, for the holding that “pursuant to La. C.C. art. 2338, the right to share in a retirement plan is a community asset, co-owned by the spouses, and subject to division upon dissolution of the marriage.” In that case, Joel and Dianne McWilliams were married in 1969, and in 1972 Mr. McWilliams began working for the state of Louisiana. The couple had two children, Jodee and Joelle. The couple divorced in 1987, and a 1989 judgment recognized Dianne’s interest in Joel’s state retirement plan, providing that she was entitled to her portion, when and if he retired, terminated employment, or died. The judgment also recognized her interest in his military retirement plan and his interest in her Diocese of Baton Rouge retirement plan and ordered Dianne to make an equalizing payment to Joel. In 1993, Joel married Jane McMahon, and around 10 years later Joel died while still employed by the state.
Thereafter Jane, Joelle (then a college student), and Dianne all filed claims with LASERS for survivor benefits. LASERS invoked a concursus pursuant to La. C.C.P. art. 4651 to determine who was entitled to the survivor benefits. The Louisiana Supreme Court determined that, although Dianne was not the surviving spouse or child of Joel under the LASERS plan, her interest in the community portion of Joel’s retirement plan from their marriage remained intact. While these facts are very different from those in the case before us now, they show the extent to which the law protects the interest of the non-worker spouse in the worker spouse’s retirement service credits accrued during the marriage.
We find that under the jurisprudence, and the facts of this case, the service credits retained their character as a community asset. The service credits were |9earned during the marriage, they were cashed in and the refunded money went to the community. Thereafter, money was set aside by paycheck deductions beginning during the marriage from community funds to repurchase the service credits. The purchase was made after the divorce with both community and separate funds.
Thus, we find no legal error in the trial court judgment. All of the service time earned during the community, as well as all of the repurchased service time which had been earned during the community, is a community asset. Ms. Rangeley, however, is entitled to reimbursement from Mr. Barker for one-half of her separate funds used to repurchase the prior service time in the amount of $2,834.50.
In his answer to the appeal, Mr. Barker asks that the judgment be modified to provide for damages for his loss of interest accrued on any portion of the retirement benefit awarded to him by the trial court, including both the DROP account as well as the monthly service retirement allowance, retroactive to the date of distribution of the benefits. Mr. Barker did not make this request to the trial court; therefore the trial court did not rule on this issue, and his request is denied.
*22 For the foregoing reasons, the trial court judgment is affirmed. The costs of the appeal are assessed against Ms. Rangeley.
RULE TO SHOW CAUSE DISMISSED; JUDGMENT AFFIRMED; ANSWER TO THE APPEAL DENIED.

. Sims v. Sims, 358 So.2d 919 (La.1978).