WILLIAMS, J.
hThe defendant, Hoby Fleece, appeals a judgment awarding 24.5% of his military retirement benefits to his former wife, Pa-tita Fleece, and ordering her to pay reimbursement for one-half of the cost to purchase retirement service time. For the following reasons, we reverse in part and affirm in part.
FACTS
In August 1983, Hoby Fleece (“Hoby”) enlisted in the United States Air Force. Hoby and. Pacita Fleece were married in July 1984. During the marriage, Hoby paid into the retirement plan. On December 31, 1992, Hoby was discharged from active duty military service and received a separation payment of $47,930.60, reflecting his retirement contributions; These funds were used for ordinary expenses during the marriage. Hoby participated in military reserve duty from January 1993 until - January 14, 2002, when he resumed active duty military service. In February 2004, the parties were ■ divorced and the community regime was terminated as ..of August 19, 2003. Hoby served in the military until his retirement on December 31, 2013. At that time, he contracted with the Department of Defense to “buy back” 8.495 years of active duty service at a cost of $47,930.60, the same amount he had previously., received as. separation pay. This purchase allowed him- to accrue 20 years of active duty service and be eligible for military retirement benefits. The repurchase amount would be paid in installments deducted from Hoby’s retirement pay.
At trial on the-partition of community property, the parties stipulated to the following: prior to the marriage, Hoby accrued .882 years of active |2duty service; from the date of the marriage until his separation from active duty in December 1992, Hoby accrued 8.495 years of service; from January 1, 1993 to August 19, 2003, when the community regime ended, he accrued 1.903 years of service; and after termination, Hoby accrued 10.378 years of service.- -At , the time of his retirement in 2013, Hoby had 12.281 years of service, excluding the 8.495 years for which Hoby had received payment after, leaving active duty in 1992. To obtain the 20 years of service needed to be eligible for the mili *92 tary retirement plan, Hoby chose to “repay” the $47,903.60 that he had received when he initially left active duty in 1992. This buy back will be paid over time by deductions from Hoby’s military retirement benefits;,
Subsequently, the trial court issued a written opinion finding that the buy back payments to be withheld from the retirement benefits of the defendant, Hoby Fleece, are not his separate property and as. a result,- all of tlie repurchased service time, which had been earned during the community,- is an asset of the community. The court further found that plaintiff, Pa-cita Fleece, must reimburse defendant for one-half of the funds used to repurchase the 8.495 years of military service accrued during the community regime. The trial court calculated the percentage of retirement benefits due to plaintiff by -dividing 10.06 years of marriage by 20.45 years of military service, multiplied by one-half and multiplied by the amount of the parties’ bank account at the termination of the community. ■ The trial court rendered judgment awarding to plaintiff 24.5% of defendant’s military retirement benefits and ordering plaintiff to pay reimbursement of |.<¡$21,465.72 to defendant- as 'her proportional share of the cost to repurchase service time. The defendant appeals the judgment.
DISCUSSION
The defendant contends the trial court erred in awarding 24.5% of his military retirement benefits to his former wife. Defendant argues that the community portion of the military retirement benefits is limited to 1.903 years because his obligation to purchase the additional military service time for retirement eligibility arose after the community regime had terminated.
The community property includes property acquired during the existence of the legal regime through the effort or skill of either spouse; property acquired with community things or with’‘community and separate things, unless classified as separate property under Article 2341; and all other property not classified by law as separate. LSA-C.C. art. 2338. The separate property of a spouse is his exclusively ,and includes property acquired-prior to the establishment of the community property regime and property acquired by a spouse with separate things or with separate and community things when the value , of the community things is inconsequential in comparison with the value of the separate things ,used. LSA-C.C. art. 2341.
 When acquired through employment during the existence of a marriage, the right to share in a retirement plan is a community asset, which at 'the dissolution of the community, must be so classified even though at the time acquired or at'the time of dissolution, the right has no redeemable cash value. Sims v. Sims, 358 So.2d 919 (La.1978); Tucker v. Tucker, 47,373 (La.App.2d Cir.8/1/12), 103 So.3d 493, writ denied, 2012-1940 (La.11/9/12), 100 So.3d 844. The community interest in a retirement plan stems not only from contributions made by community funds, but also by reason of any right to receive proceeds attributable to such employment during the community. A spouse’s right to receive an annuity or other benefits payable by a retirement plan is, to the extent attributable to his employment during the community, therefore an asset of the community. Sims, supra. The partition and valuation of pension rights is a matter left for the discretion of the trial court' and those determinations will not be disturbed absent an abuse of that discretion. Hare v. Hodgins, 586 So.2d 118 (La.1991).
*93 In the present case, defendant argues in his brief that the 8.495 years of service during the marriage is not part of the community because the community was previously compensated for that time, which will be repurchased after termination of the community regime. Defendant asserts that the present situation is similar to that of Tucker, supra, which also involved the purchase of service time after a divorce. Tucker was married in 1984. She worked as a teacher and participated in the state retirement plan during her marriage. In 1987, she stopped teaching and withdrew her previous retirement contributions. Tucker resumed teaching in 1988 and she and her husband were later divorced, terminating the community regime as of May 2006. Tucker taught for one year after termination of the community and in 2009, she bought back two years of service credit to be eligible for retirement. This court found that the. service credit purchased by Tucker with her separate funds after termination of the community was the | ¿separate property of Tucker.
The plaintiff argues in her brief that the trial court correctly followed the case of Barker v. Barker, 2013-0116 (La.App. 1st Cir.12/18/13), 137 So.3d 16, writ denied, 2014-0130 (La.4/4/14), 135 So.3d 642, which also involved thé repurchase of service credit after the community regime had terminated. In Barker, the parties were married in 1979. Mrs. Barker worked for the Baton Rouge Police Department and joined the parish retirement system. She resigned in 1985 and her retirement contributions were refunded. In 1986, she resumed working for the police department and in 1987, she began buying back her prior service time with deductions from her paycheck. After filing for divorce in June 1988, Mrs. Barker continued to make payments for the service time with her separate funds. The court found that all of the service time earned during the community regime is a community asset, including. the repurchased service time, which was accrued during the marriage and then was repurchased with both community and separate funds.
We are not persuaded by defendant’s contention that the 8.495 years of service during the community would have no value without the additional 10 years he worked after the marriage. Without those years attributable to service during the community, those post-termination service years would not have made defendant eligible for retirement since there would have been nothing to buy back. Further, even with the post-termination and' repurchased service time, defendant would not have been eligible for retirement without the other 1.9 years of service during the community. IfiThis case shows that property such as pension rights is acquired over time and is based on the employee’s entire length of service.
Contrary to defendant’s assertion, the circumstances of this case differ from the situation of Tucker, in.that the defendant will not be using his solely separate funds to repurchase the 8.495 years of service time. Instead, that tim§ will be purchased with deductions from the retirement pay, which is part community due to the 1.9 years of service time attributable to the community regime, apart from the service time, in question. Thus, similar to the situation in Barker, the 8,495 years of service time being repurchased with the retirement pay is being acquired with community and separate funds. Consequently, we cannot say the trial court erred in determining that all of the service time earned during the community, including the repurchased service time, is a community asset. Therefore, the trial court did not err in concluding thát plaintiff is entitled to 24.5% of thé retirement benefits. The assignment of error lacks merit.
*94 However, in reaching this conclusion, we must reverse that part of the judgment ordering plaintiff to pay $21,465.62 in reimbursement for the repurchase amount. Unlike the situation of Barker, in which the employee spouse had already made payments with her separate funds, the record in this case shows that the service time will, be repurchased by deductions from the retirement pay, which is part community. Because the community will share in the repurchase of service time through the deduction from the monthly retirement benefit, there is no showing that a separate reimbursement is owed. The defendant may have a claim in the future to the 17extent, he can show that his separate funds were used to pay the community portion of the repurchase obligation.
CONCLUSION
For the foregoing reasons, that part of the trial court’s judgment ordering Pacita Fleece to pay reimbursement of $21,465.72 is reversed.' The judgment is otherwise affirmed. Costs of this appeal are assessed to the appellant, Hoby Fleece.
REVERSED IN PART;' JUDGMENT OTHERWISE AFFIRMED.